Argued December 3, 1968, affirmed January 29, petition for
rehearing denied March 11, 1969

STATE OF OREGON, *Respondent, v.*
GARY LEE SARGENT,
*Appellant.*
449 P. 2d 845

*Oscar D. Howlett,* Portland, argued the cause and filed a brief for appellant.

*Jacob B. Tanzer,* Assistant Chief Deputy District Attorney, Portland, argued the cause for respondent. With him on the brief was George Van Hoomissen, District Attorney, Portland.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

GOODWIN, J.

Defendant was convicted of violating ORS 475.100 (sale or possession of a dangerous drug as defined in Regulation 80-005 published by the State Board of Pharmacy). He appeals.

The sole issue is whether the Legislative Assembly may, constitutionally, delegate to an administrative agency the power to define an element of a crime.

Oregon Constitution, Art I, § 21, provides that no law shall be passed the taking effect of which shall be made to depend upon any authority, except as provided by the constitution. Article III, § 1, provides that the powers of government shall be divided into three separate departments; and Article IV, § 1, provides that the legislative authority shall be vested in the Legislative Assembly and in the people.

■ The foregoing provisions have been construed to mean that the Assembly cannot delegate its power to make law, but that it can delegate, at least to an agency of government, the power to determine the existence of facts or circumstances mentioned in the law upon which the law will become operative. *Foeller v. Housing Authority of Portland,* 198 Or 205, 264-268, 256

P2d 752 (1953); *Marr v. Fisher et al*, 182 Or 383, 187 P2d 966 (1947); *Van Winkle v. Fred Meyer, Inc.*, 151 Or 455, 462, 49 P 2d 1140 (1935).

The state proved that, at the time and place stated in the indictment, the defendant unlawfully sold lysergic acid diethylamide (LSD). The chemical compound described in the indictment is not listed in any statute as a dangerous drug, but is so designated in Regulation 80-005. ORS 475.010(1) provides:

> " 'Dangerous drug' means a drug designated by the Drug Advisory Council as a dangerous drug and included in published regulations of the State Board of Pharmacy under ORS 689.620."

ORS 689.650 creates a Drug Advisory Council of seven members to be appointed by the governor, and ORS 689.660 provides that the council so created:

> "* * * [M]ay, after investigation, designate as a dangerous drug any drug which contains
>
> * * *
>
> "* * * * *
>
> "(3) Any substance which the council finds as substantially affecting or altering. consciousness, the ability to think, critical judgment, motivation, psychomotor coordination or sensory perception, and having potential for abuse when used without medical supervision."

The only evidence of legislative intent available to us suggests that the Assembly in 1965 was alarmed about the notoriety of new chemical combinations that could produce the results listed in ORS 689.660(3), and which might, unless regulated, be made available to the public between legislative sessions. Therefore, the Assembly elected not to enumerate in a statute all of the then identifiable compounds such as LSD, but resolved instead to delegate to the Board of Pharmacy

the function of publishing regulations which would designate certain drugs as dangerous. The Board of Pharmacy, in turn, was directed to look to the newly created Drug Advisory Council to learn which drugs were, for reasons of public safety, to be designated as "dangerous."

Under ORS ch 475, a person who is about to sell a drug must look to the regulations of the State Board of Pharmacy to learn whether the drug he wants to sell has been designated as dangerous. Such a person may or may not be aware of the effects of a particular drug upon human users.

The Drug Advisory Council, acting under ORS 689.660, decides whether a substance "affects or alters consciousness, the ability to think, critical judgment, motivation, psychomotor coordination, or sensory perception." If so, the council may classify the substance as a dangerous drug.

The Assembly has said, in effect, that any drug is dangerous which produces the results set out in ORS 689.660. The law proscribing transactions in dangerous drugs has been determined by the legislature, and the only function left to the administrative body is that of enumerating the specific chemicals that fall within the statutory ban.

In *Iske v. United States,* 396 F2d 28 (10th Cir 1968), the offense was the sale and delivery of LSD, a depressant or stimulant drug within the meaning of 21 USC § 321(v)(3), in violation of 21 USC § 331(q) (2). The statute defined "depressant or stimulant drug" as any drug which contains any quantity of a substance which the Secretary (of Health, Education and Welfare) after investigation had found to have, and by regulation designated as having, a *potential for*

****

*abuse* because of its depressant or stimulant effect on the central nervous system or its hallucinogenic effect.

The court upheld the delegation, basing its conclusion on the following considerations: the legislative history, which contained detailed discussions of when a drug should be regulated; the consistent interpretation by the agency involved in regulating drug traffic; the real and substantial relation of LSD to the object sought to be controlled by the Drug Abuse Control Amendments of 1965; the practical need for delegation in an area where new developments are a constant threat; and the balancing of the benefits of unregulated conduct against its dangers.

In *White v. United States,* 395 F2d 5 (1st Cir), cert. denied, 393 US 928, 89 S Ct 260, 21 L Ed 2d 266 (1968), the defendant contended that the delegation was unconstitutional under Article I, § 1, of the Constitution. As in *Iske v. United States,* "potential for abuse" was challenged as an unintelligible guideline that results in an abdication by Congress of its responsibility to state with clarity why it wants particular acts declared illegal.

The court stated that the proscribed traffic was in "depressant or stimulant drugs" which have a "potential for abuse" because of their "effect on the central nervous system or hallucinogenic effect." The court considered this standard to be specific enough to satisfy due process. Apparently, the court felt that even without the illumination supplied by the vast legislative history of the drug-control amendments, the statutory standards were sufficient. The court noted that the rapid development of drugs and increased public experimentation suggest that the delegation was a wise and appropriate solution to the problem.

■ In view of the clear legislative denunciation of traffic in dangerous drugs, and in view of the equally clear direction to the appropriate agency to discover and publish the names of drugs that will produce the effects which the legislature has declared to be a danger to the public, we believe that the seller of drugs is not denied due process of law when he is required to consult the regulations before he undertakes to market a drug.

■ Since the parties have not briefed and argued questions concerning the efficacy of the methods used by the Drug Advisory Council in making its determination that the drug in question in this case is "dangerous" we will reserve judgment upon such questions until they are properly before us. It is sufficient for the purposes of this case to hold that the delegation in ORS 475.010(1) does not violate either the state or federal constitution.

Affirmed.