Argued May 18, affirmed August 12, petition for rehearing denied
September 30, petition for review denied November 16, 1971

# STATE OF OREGON, *Respondent, v.* RICHARD LOREN ALEXANDER (C-57420), *Appellant.*

### 487 P2d 1151

*William C. Snouffer*, Portland, argued the cause for appellant. With him on the briefs were Lindsay, Nahstoll, Hart, Duncan, Dafoe & Krause, Portland.

*Walter L. Barrie*, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and FORT, Judges.

FORT, J.

Defendant, having waived a jury, was convicted by the court of selling a dangerous drug (methamphetamine). ORS 475.100. He appeals.

He contends that methamphetamine was not properly designated a dangerous drug by the Drug Advisory Council. The principal point relied on is that the Drug Advisory Council did not give notice of intent to hold a public hearing before designating methamphetamine to be a dangerous drug, as required by ORS 183.330 (3) of the Administrative Procedures Act. A brief examination of the statutory scheme is necessary to a resolution of the problem.

The State Board of Pharmacy was created by Oregon Laws 1935, ch 55, p 72. The title to the Act stated that its purpose was "[t]o regulate the practice of pharmacy and the manufacture, sale and distribution of medicine, drugs, chemicals and poisons * * *."

Its powers were set forth in section 3 of that Act, which subsequently became ORS 689.620.

Prior to 1965, ORS 475.100 (1) made it a crime to "sell, give away, barter, distribute, buy, receive or possess" a large number of specifically named drugs, their compounds or derivatives. Among the proscribed drugs was methamphetamine. In 1965 that statute was amended to eliminate specific reference to any of the previously named drugs and in lieu thereof the term "dangerous drug" was substituted. Oregon Laws 1965, ch 545, Section 2. Section 1 of ch 545 defined a dangerous drug as one so "designated by the Drug Advisory Council" and included in published regulations of the State Board of Pharmacy under ORS 689.620. Section 4 of ch 545 amended ORS 689.620 to empower the State Board of Pharmacy to *make regulations relating to the sale of drugs that the Drug Advisory Council designates as dangerous drugs.*" (Emphasis supplied.) ORS 689.620 (8). No such authority is given to the Drug Advisory Council.

Section 6 of ch 545 created the Drug Advisory Council, and section 7 of that Act set forth its authority after investigation to "designate as a dangerous drug" by its subsection (2) "[a]mphetamine or any of its optical isomers, salt of amphetamine or salt of an optical isomer of amphetamine or any substance which the council has determined to be habit forming because of its medically stimulant effect on the central nervous system."

Section 5 of ch 545 directs that sections 6 and 7 thereof "are added to and made a part of ORS 689.510 to 689.640." Accordingly, they now appear as ORS 689.650 and 689.660, respectively. The former created the State Board of Pharmacy and set forth its organization, power and duties. The Drug Advisory

Council thus was attached to the State Board of Pharmacy.

In *State v. Sargent,* 252 Or 579, 449 P2d 845 (1969), the Supreme Court considered at length the legislative purposes leading to the enactment of Oregon Laws 1965, ch 545. The court there said:

"In view of the clear legislative denunciation of traffic in dangerous drugs, and in view of the equally clear direction to the appropriate agency to discover and publish the names of drugs that will produce the effects which the legislature has declared to be a danger to the public, we believe that the seller of drugs is not denied due process of law when he is required to consult the regulations before he undertakes to market a drug." 252 Or at 584.

The court there also held:

"The Assembly has said, in effect, that any drug is dangerous which produces the results set out in ORS 689.660. The law proscribing transactions in dangerous drugs has been determined by the legislature, and the only function left to the administrative body is that of enumerating the specific chemicals that fall within the statutory ban." 252 Or at 582.

Beginning with September 14, 1965, and again in January, May and July 1966, the State Board of Pharmacy adopted Oregon Administrative Rules, ch 855, § 80-005, which provided:

"The following drugs have been designated as 'dangerous drugs' by the Drug Advisory Council and except as provided in ORS 475.100 and 475.110, no person shall sell, give away, barter, distribute, buy, receive or possess:

"(1) * * * amphetamine, * * * methamphetamine * * *.

"* * * * *."

Defendant does not contend that in adopting the foregoing the State Board of Pharmacy failed to give the notice required by ORS 183.330 (3). Indeed, the minutes of the board so indicate.[1] Since the foregoing rule was duly published by the Secretary of State (Oregon Administrative Rules, ch 855, § 80-005) as provided in ORS 183.360, we presume that ORS 183.020 relating to the filing of a duplicate original order in that office was duly complied with. ORS 41.410 (3), 41.360 (15). Furthermore, the reason for filing a duplicate original order with the Secretary of State, required by ORS 183.020, is, as the statute says, to assure its availability for public inspection. When, as here, the Secretary of State publishes the order in the Oregon Administrative Rules, it is obvious that the purpose of the statute has been met.

Accordingly, we conclude it was not the intention of the legislature to require that the Drug Advisory Council also give public notice of hearing prior to making a determination that a drug is dangerous.[2] It is sufficient that the State Board of Pharmacy did so, since only that agency was empowered to adopt the regulation which brought methamphetamine within the purview of ORS 475.100. We also conclude that the challenged regulation was duly and regularly adopted by the State Board of Pharmacy, and that the

---

[1] See minutes of State Board of Pharmacy, September 9, 1965, May 13, 1966, and July 25, 1966.

[2] The clarifying amendment of ORS 689.620(8) adopted by Oregon Laws 1969, ch 514, Section 38, we think is in harmony with this conclusion. ORS 689.620(8) now reads as follows:

"[The board may] [p]ursuant to ORS chapter 183, make such rules as are necessary and feasible for carrying out ORS 453.010 to 453.170 and this chapter, and make rules relating to drugs that the Drug Advisory Council designates by order to the board as dangerous drugs pursuant to ORS 689.660."

notice given and hearing provided by that body constituted compliance with ORS 183.330 (3).

■ Defendant demurred to the indictment. The court overruled it. He contends that it fails to state a crime (ORS 135.630 (4)) because it does not expressly negative within it the exceptions contained in ORS 475.100 which, when applicable, might exempt a person from liability thereunder, and that he is thereby denied due process and equal protection of law. In its pertinent portions the indictment charged:

"INDICTMENT FOR
VIOLATION OF
O.R.S. 475.100

"The above-named defendant is accused * * * of the crime of ILLEGAL SALE OF DANGEROUS DRUG committed as follows:

"The said defendant on or about the 8th day of October, 1969, in Multnomah County, State of Oregon, did unlawfully and feloniously sell a dangerous drug, to-wit: methamphetamine * * *.

"* * * * *."

In *Tritt v. United States*, 421 F2d 928 (10th Cir 1970), the 10th Circuit Court of Appeals considered this precise contention in connection with the sale of a "depressant or stimulant drug," namely, "Biphetamine capsules," in violation of 21 USC, §§ 331 and 360a. The court said:

"In Walker v. United States, 176 F.2d 796 (9 Cir.), the court said, 'That a statute contains exceptions or exemptions does not mean that they must be negated in the indictment; nor need it negate other possible defenses'. And in Nicoli v. Briggs, 83 F.2d 375 (10 Cir.), this court said '* * *

it has uniformly been held that it is unnecessary for the government to allege or prove that the defendant does not come within a class excepted by the statute. Where there is a general provision defining the elements of an offense, neither the indictment nor the proof need negative exceptions'. Here, the essential elements of the offenses charged, as defined by the pertinent provisions of the statute, are (1) depressant or stimulant drugs and (2) causing the sale and delivery of such drugs to another person. * * * If in any instance the appellant believed that he came within one or more of the exceptions enumerated in Section 360a(a), it was incumbent upon him to say so. United States v. Rowlette, 397 F.2d 475 (7 Cir.). We hold, therefore, that the indictment was sufficient to apprise the appellant of the offenses charged." 421 F2d at 929-30.

*Accord*: *United States v. Rowlette,* 397 F2d 475 (7th Cir 1968); *Reed v. United States,* 210 A2d 845 (DC Cir 1965); *United States v. Safeway Stores,* 252 F2d 99 (9th Cir 1958).

Defendant urges that *State v. He Quan Chan,* 113 Or 168, 232 P 619 (1925), compels a different result. There the court said:

"* * * [W]here a statute defining an offense contains an exception in the enacting clause of the statute which is so incorporated with the language defining the offense that the ingredients of the offense cannot be accurately and clearly described if the exception is omitted, an indictment founded upon the statute must allege enough to show that the accused is not within the exception." 113 Or at 171-72.

Here it is obvious "that the ingredients of the offense" can be and were "accurately and clearly described," even though the exceptions enumerated

elsewhere in the statute (ORS 475.100 and 475.110) were omitted.

We hold that the indictment was valid.

The judgment is affirmed.