Argued and submitted July 23, 1983, rule held invalid February 22, 1984

## CORVALLIS LODGE NO. 1411
## LOYAL ORDER OF MOOSE et al,
*Petitioners,*

*v.*

## OREGON LIQUOR CONTROL COMMISSION,
*Respondent.*

(CA A26189)

677 P2d 76

John R. Faust, Jr., argued the cause for petitioners. On the briefs were Paul O'Hollaren, Ridgway K. Foley, Jr., Robert E. Joseph, Jr., Cynthia S.C. Shanahan, and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

William Nessly, Jr., Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were

Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General, and William F. Gary, Solicitor General, Salem.

Before Joseph, Chief Judge, and Buttler and Van Hoomissen, Judges.

JOSEPH, C. J.

## JOSEPH, C. J.

Petitioners seek judicial determination of the validity of an Oregon Liquor Control Commission rule regulating liquor service to nonmembers by Class B dispenser licensed organizations. ORS 183.400. They assert that OAR 845-08-045 involves an impermissible delegation of legislative authority, violates equal protection provisions in the state constitution and conflicts with state and federal antitrust laws. We agree that the challenged rule is an improper delegation (or subdelegation) of governmental authority and is invalid.

As part of its regulatory scheme, OLCC issues different classes of liquor dispenser licenses. *See* ORS 472.110. Class A licenses are issued to commercial establishments that sell liquor by the drink. Class B licenses are issued to private clubs and fraternal and veterans' organizations. In general, Class B licensees may serve alcohol to members and their guests, but not to members of the general public. OLCC held hearings and established by rule limited exceptions to that restriction. One exception was that Class B licensees were permitted to host and to sell alcoholic beverages to nonmembers in connection with an activity that no Class A dispenser licensee in the area was willing or able to accommodate. A Class B licensee was required to contact all Class A licensees within a 10 mile radius of its location and determine whether any of those licensees was willing or able to accommodate the proposed activity. The Attorney General advised that that rule constituted an unconstitutional delegation of legislative power, because the restriction imposed on the Class B licensees could be removed only with the consent of Class A licensees and that consent depended on the "whims" of Class A licensees rather than on objective facts. 42 Op Att'y Gen 193 (1981). OLCC redrafted the rule, retaining the same procedures but intending to make consent of Class A licensees more dependent on objective facts. Although to allow Class B licensees to serve liquor to nonmembers at all appears to be a matter within the agency's discretion, petitioners challenge the procedures in the new rule that require Class B licensees that desire to host a nonmember event to contact all Class A licensees within a 10 mile radius and ascertain whether they are able to host the event.

The pertinent portions of OAR 845-08-045 are:

*"Service to non-members by Class 'B' dispenser licensees.*

"(1) Unless otherwise prohibited by law, licensees holding a Class 'B' dispenser's license may sell or serve alcoholic beverages to non-members only if the non-members: * * *

"(f) Are participating in an activity which no Class 'A' dispenser licensee in the area has facilities available to accommodate, as provided in subsection (2) of this rule.

"(2) To qualify under subsection (1)(f) of this rule, the Class 'B' dispenser licensee must contact each qualified Class 'A' dispenser licensee located within a 10-mile radius of the licensed premises, notify them *[sic]* in writing of the date, time, size and nature of the proposed activity and obtain from a responsible representative of each one either oral or written notice that the Class 'A' dispenser licensee does not have facilities available to accommodate the activity. At least 10 days before the activity commences, the Class 'B' dispenser licensee must submit a written list, on forms provided by the Commission, of each qualified Class 'A' dispenser licensee and the name of each person stating on behalf of that licensee that the licensee does not have facilities available for the activity, and the date and time such notice was given.

"(3) A Class 'A' dispenser licensee or the licensee's responsible representative must provide notice as to the availability of facilities promptly upon inquiry by a Class 'B' dispenser licensee. Facilities shall not be considered available when they cannot reasonably physically accommodate the proposed activity, when they are scheduled for another use, when the Class 'A' dispenser licensee has a history or policy of refusing to accommodate comparable activities of the same scope, or when the price to be charged for the activity would be grossly disproportionate from the price other Class 'A' dispenser licensees in the area would charge if they had appropriate facilities.

"(4)(a) For purposes of this rule, 'qualified Class "A" dispenser licensee' means any such licensee who could reasonably be expected to accommodate the proposed activity. For example, if the activity involves a dance, in most premises which are large enough to handle the number of persons expected to attend, a portion of the premises could be converted into a dance floor, or a portable dance floor could be rented, and therefore the licensee could 'reasonably be expected to accommodate the proposed activity.'

"(b) 'Grossly disproportionate' means a charge which the Commission finds so high as to be not reasonably competitive.

"(5) Notwithstanding a Class 'A' dispenser licensee's indication that the licensee can accommodate the proposed activity, unavailability will be assumed upon an adequate showing by the Class 'B' dispenser licensee in writing that such Class 'A' dispenser licensee does not have adequate available facilities."[1]

Petitioners argue that this version of OAR 845-08-045, like the one disapproved by the Attorney General, is unconstitutional[2] because it improperly delegates legislative authority to Class A licensees. They argue that the rule does not remedy constitutional deficiencies of the former rule, because the objective criteria relating to the actual physical ability of a Class A licensee to host the proposed activity can still be improperly manipulated by Class A licensees to prevent Class B licensees from hosting a proposed activity. Specifically, they argue that the criteria contained in subsection (3) are ambiguous and merely supply commercial licensees with the means to disguise capricious and anticompetitive conduct without providing any adequate protective recourse to affected Class B licensees.

Petitioners rely on *General Electric Co. v. Wahle,* 207 Or 302, 330, 296 P2d 635 (1956); *Foeller v. Housing Authority of Portland,* 198 Or 205, 265, 256 P2d 752 (1953); and *Van Winkle v. Fred Meyer, Inc.,* 151 Or 455, 463, 49 P2d 1140 (1935). Those cases developed a general "nondelegation" doctrine that emphasizes the need for legislative standards as a precondition for the delegation of any governmental function. In *Van Winkle,* for example, the Supreme Court struck down as an improper delegation of legislative power to private persons a statute that allowed the Governor to approve a marketing agreement entered into by a substantial majority of persons engaged in the production or sale of a product unless he found it against the public interest. Once approved, the terms of a marketing agreement developed by private individuals would become state law. The court invalidated the statute, because it left

---

[1] On November 15, 1982, OLCC made some revisions in the rule in issue here and adopted a new temporary rule OAR 845-08-045. This opinion applies to both versions of the rule, for the pertinent sections of the temporary rule are substantially identical to those of the challenged rule.

[2] Petitioners base their constitutional challenge on Article I, section 21, Article III, section 1, and Article IV, section 1, of the Oregon Constitution.

"* * * wholly to persons outside of the legislature the power to determine whether there shall be a law at all and, if there is to be a law, what the terms of that law shall be. It is impossible to conceive of a more complete delegation of legislative power and, since the act contravenes the plain provisions of our constitution in that it attempts to make an unlawful and unauthorized delegation of legislative power, the act is unconstitutional and void." *Van Winkle v. Fred Meyer, Inc., supra,* 151 Or at 463.

More recently, the emphasis of the prohibited delegation doctrine has shifted from a concern for adequate legislative standards to a requirement that any delegation be accompanied by procedural safeguards to protect against arbitrariness.

"* * * [T]he important consideration is not whether the statute delegating the power expresses *standards,* but whether the procedure established for the exercise of the power furnishes adequate *safeguards* to those who are affected by the administrative action." *Warren v. Marion County, et al,* 222 Or 307, 314, 353 P2d 257 (1960). (Emphasis in original.)

*See also Knight v. Dept. of Revenue,* 293 Or 267, 271-272, 646 P2d 1343 (1982); *Meyer v. Lord,* 37 Or App 59, 64-65, 586 P2d 367 (1978), *rev den* 286 Or 303 (1979); *Bercot v. Ore. Transportation Comm,* 31 Or App 449, 570 P2d 1195 (1977).

 Accountability of government is the central principle running through the delegation cases. When, as in this case, governmental power to make decisions granting or denying privileges is, in whole or in part, delegated to private individuals[3] who have a self-interest in the decisions, accountability is necessarily attenuated. That inherent problem is compounded in the present case because those seeking governmental action, *i.e.,* a permit, must *directly* confront self-interested private competitors to whom authority has been delegated in the first instance to ascertain facts that ultimately may determine the success or failure of the application. Given their competitive postures, there is a substantial risk that the Class A licensees' response will be colored by self-interest. A Class B licensee would be forced to confront that

---

[3] As a general rule, the delegation of a factfinding function to private individuals is an acceptable procedure. However, it is inappropriate when the group to which the factfinding function is delegated has an interest in the way that the facts are determined. *See Foeller v. Housing Authority of Portland, supra.*

potentially arbitrary and unresponsive exercise of governmental authority and, unless there are sufficient procedural safeguards, would have no way to make it accountable.

The delegation to Class A licensees in the rule as presently drafted poses serious problems. First, a Class B licensee applicant must deal directly with Class A licensees. The rule by itself suggests no speedy and efficient mechanism for resolution of disputes about whether a particular Class A licensee "has facilities to accommodate" the planned activity. It would be an entirely different situation if the agency itself were to determine the availability of Class A facilities on the basis of information it gathers from Class A licensees. Second, the burden placed on Class B licensees is a variable one, depending in large measure on geographical factors. We take judicial notice that one of the petitioners, University Club of Portland, Inc., is located in the downtown Portland business center and that within a 10 mile radius of that location (which would encompass most of the Portland metropolitan area) there are more Class A licensees than in any other area of that size in Oregon.[4] That petitioner, then, is charged with a substantially greater quantitative showing than, for instance, petitioner Astoria Aerie No. 2819 of the Fraternal Order of Eagles. The rule itself suggests neither a reason for nor the means of relief from the situation.

The state argues that the rule does contain adequate procedural safeguards. It contends that the availability of Class A facilities is an objective fact that does not depend on the willingness of Class A licensees to host the proposed activity and that therefore that group cannot abuse the factfinding function that it has been delegated. The state also points to subsection (5) of the rule:

> "(5) Notwithstanding a Class 'A' dispenser licensee's indication that the licensee can accommodate the proposed activity, unavailability will be assumed upon an adequate showing by the Class 'B' dispenser licensee in writing that such Class 'A' dispenser licensee does not have adequate available facilities."

---

[4] The hearings officer suggested that the rule is not intended to apply to permit Class B licensees in the state's larger urban areas to serve nonmembers. Nothing in the rule limits its geographical scope.

The state contends that the operation of the rule does not depend on the unlimited discretion of the Class A licensees but that the agency itself makes the ultimate choice based on a showing by Class B license applicants of the unavailability of Class A facilities.

Even with that claimed safeguard, there are possible situations left unchecked. For example, a Class A licensee could defeat a Class B licensee's application to host an event by the mere fact of having the facilities and ability to accommodate it, regardless of the Class A licensee's intention to host it or not. The Class A licensee could simply prevent business from going to a quasi-competitor. Another problem is that, although the rule requires Class A licensees to give "notice as to the availability of facilities promptly on inquiry by Class B dispenser licensees," it does not indicate what constitutes prompt notice. Furthermore, a Class B licensee has no apparent remedy for a Class A licensee's failure to provide prompt notice. The Class A licensee could delay responding, for whatever reasons, and thereby impair or even prevent the Class B licensee's ability to comply with the rule's requirement of providing OLCC with written notice of the availability of Class A facilities at least 10 days before the proposed activity commences. OAR 845-08-045(2).

■ We conclude that OAR 845-08-045 constitutes an invalid delegation of governmental authority to private individuals, because it fails to provide procedural safeguards to protect against the unaccountable exercise of governmental power delegated to the Class A licensees. *See Warren v. Marion County, et al, supra; see generally* Davis, Administrative Law Treatise, § 3:15 (1978). The challenged rule is merely a limited exception to a general and valid prohibition against private clubs serving alcohol to nonmembers, and the limited exception was established by the agency to accommodate Class B licensees. However, if the agency chooses to allow any service to nonmember activities, it must do so in a way that protects Class B licensees from arbitrariness.

Rule held invalid.[5]

---

[5] Because of our disposition of the case, we do not reach petitioner's other arguments against the rule.