On appellant's reconsideration filed June 19, 1985, reconsideration allowed and former opinion (73 Or App 575, 700 P2d 315, (1985)), affirmed September 18, 1985

## STATE OF OREGON,
*Respondent,*

*v.*

## RICHARD STEPHEN SELF,
*Appellant.*

## (10-84-04453; CA A33130)

706 P2d 975

Richard Smurthwaite, Eugene, for petition.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

GILLETTE, P. J.

### GILLETTE, P. J.

In this criminal case, defendant petitions for Supreme Court review of our affirmance, without opinion, of his conviction for solicitation to possess a controlled substance—cocaine. *State v. Self,* 73 Or App 575, 700 P2d 315 (1985). He contends, *inter alia,* that (1) the Oregon solicitation statute forbids only solicitation of Oregon crimes, and he therefore may not be punished for the solicitation in this case because the substantive crime was a California offense; (2) the charging instrument was deficient because it failed to allege that delivery of cocaine was a crime in California; and (3) the Oregon solicitation statute, if applicable to foreign crimes, is unconstitutional because it makes the degree of guilt in Oregon depend on the severity of the extra-jurisdictional offense. We treat the petition as one for reconsideration. ORAP 10.10. As we originally viewed the case, we believed that it had no significant precedential value. On reconsideration, that view has changed. We grant the petition and affirm the conviction.

At the time of the commission of the instant offense, defendant was serving a sentence in the Lane County Jail. While at that facility, he telephoned one Webb, whose foster daughter he knew, in an attempt to obtain Webb's help in securing $2000 for the release from jail of a third party, Brown. Defendant made about six phone calls, the first two to the foster daughter. During the fourth call, when asked by Webb about collateral, defendant for the first time said that, after his release, Brown would go to two places in Eugene and get the money to repay Webb. Then, as a further reward, Webb and Brown would go to San Francisco, where Brown would obtain and give Webb five kilos of cocaine.

After several calls, Webb contacted the Eugene Police Department. An officer came to Webb's home and, on an extension phone, listened to defendant's next call; it repeated the content of the earlier calls. Through pre-arrangement with jail personnel, a corrections officer checked defendant's identity as he was making the last call. The officer who had listened in on the extension phone then went to the jail, questioned defendant and arrested him for "solicitation of another to possess and deliver cocaine." ORS 161.435; ORS

475.992. After trial without a jury, the court convicted defendant on the lesser charge of "solicitation of attempted delivery of an illegal substance" and sentenced him to 60 days in jail with credit for time served. This appeal followed.

Before discussing defendant's assignments of error, it is useful to set the statutory stage. Possession of cocaine in Oregon is forbidden by ORS 475.992(1), which provides:

"(1) Except as authorized by ORS 475.005 to 475.285 and 475.991 to 475.995, it is unlawful for any person to manufacture or deliver a controlled substance. Any person who violates this subsection with respect to:

"(a) A controlled substance in Schedule I, is guilty of a Class A felony.

"(b) A controlled substance in Schedule II, is guilty of a Class B felony.

"(c) A controlled substance in Schedule III, is guilty of a Class C felony.

"(d) A controlled substance in Schedule IV, is guilty of a Class B misdemeanor.

"(e) A controlled substance in Schedule V, is guilty of a Class C misdemeanor."

Cocaine is a Schedule II drug; possession of it is a Class B felony. ORS 475.992(1)(b). Possession of cocaine is also a crime in California. Cal Health and Safety Code § 11055 (West Supp 1983-1984), provides, in pertinent part:

"(a) The controlled substances listed in this section are included in Schedule II.

"(b) Any of the following substances, except those narcotic drugs listed in other schedules, whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by combination of extraction and chemical synthesis:

"* * * * *

"(4) Coca leaves and any salt, compound, derivative, or preparation of coca leaves, and any salt, compound, isomer, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, but not including decocainized coca leaves or extractions which do not contain cocaine or ecgonine.

Cal Health and Safety Code § 11352 (West Supp 1983-1984) provides, in pertinent part:

"Except as otherwise provided in this division, every person who transports, imports into this state, sells, furnishes administers, or gives away, or offers to transport, import into this state, sell, furnish, administer, or give away, attempts to import into this state or transport * * * any controlled substance specified in * * * subdivision (b) or (c) of Section 11055 * * * unless upon the written prescription of a physician, dentist, podiatrist, or veterinarian licensed to practice in this state, shall be punished by imprisonment in the state prison for three, four, or five years."

The Oregon solicitation statute, ORS 161.435, provides:

"(1) A person commits the crime of solicitation if with the intent of causing another to engage in specific conduct constituting a crime punishable as a felony or as a Class A misdemeanor or an attempt to commit such felony or Class A misdemeanor he commands or solicits such other person to engage in that conduct.

"(2) Solicitation is a:

"(a) Class A felony if the offense solicited is murder or treason.

"(b) Class B felony if the office solicited is a Class A felony.

"(c) Class C felony if the offense solicited is a Class B felony.

"(d) Class A misdemeanor if the offense solicited is a Class C felony.

"(e) Class B misemeanor if the offense solicited is a Class A misdemeanor."

And, finally, Oregon's criminal jurisdiction statutes, ORS 131.205 *et seq,* provide, in ORS 131.215:

"[A] person is subject to prosecution under the laws of this state for an offense that he commits by his own conduct or the conduct of another for which he is criminally liable if:

"* * * * *

"(4) Conduct occurring within this state establishes complicity in the commission of, or an attempt, solicitation or

conspiracy to commit an offense in another jurisdiction which also is an offense under the law of this state * * *."[1]

■■　　We see the statutory scheme this way: One may be criminally liable in Oregon for soliciting the commission of a crime in another state, so long as that other state's offense has a counterpoint under Oregon law. Possession of cocaine is illegal in both Oregon and California. It is therefore permissible to charge a person in Oregon with the crime of soliciting possession of cocaine in California.[2] With this preliminary review of the statutory scheme in mind, we turn to defendant's assignments of error.

■　　Defendant first argues that the trial court erred in denying his motion for judgment of acquittal on the ground that the evidence was insufficient to prove him guilty of solicitation. We think that there was proof to spare.

■　　Defendant next argues that he is entitled to a judgment of acquittal, because soliciting a person to possess cocaine in California is not a crime under Oregon law. Defendant reasons as follows: ORS 161.435(1) defines "solicitation" as commanding or soliciting another "to engage in specific conduct constituting a crime punishable as a felony or as a Class A misdemeanor." Subsection (2) then specifically defines degrees of liability for solicitation in terms of whether the solicited offense was murder, a Class A, B or C felony or a Class A misdemeanor. Defendant then argues:

> "The Solicitation statute, by referring to the classification of felonies and misdemeanors set out in the Oregon Criminal Code at ORS 161.535 and 161.555, and the consequent punishment sections of ORS 161.605 and 161.615, shows a statutory scheme that is meaningful only in the context of the Oregon Criminal Code and [shows] a clear legislative intent to use this statute only as regulating conduct to take place within the borders of Oregon."

---

[1] The parties argue at length over whether subsection (4) or subsection (1) of ORS 131.215 is the pertinent one. We assume, for the purposes of this opinion, that the subsection for which defendant contends—(4)—is controlling. Defendant's success on this point does not, in any event, ultimately help him.

[2] The California penalty is less than Oregon's—the functional equivalent of a Class C, rather than a Class B, felony. We do not think that this variation affects the analysis. Defendant does not claim that the offense for which he was convicted led to an impermissible sentence.

If the solicitation statute stood alone, defendant's argument might be well taken. Certainly, the language in question permits the construction for which he argues. However, as already noted, the solicitation statute does not stand alone. ORS 131.215(4), quoted previously, expresses a clear legislative intent that solicitation include inducements to commit crimes in other jurisdictions, so long as those crimes have Oregon counterparts. Reading the Oregon statutory scheme as a whole, we hold that the solicitation forbidden by ORS 161.435 includes solicitation to commit offenses in jurisdictions other than Oregon.

■ Defendant argues, in the alternative, that, if ORS 161.435 is construed as we now construe it, such a construction would be invalid for any or all of the following reasons:

(1) The construction would violate the Equal Protection Clause, US Const, Amend XIV. He does not say how it would do so, this proposition is not self-demonstrating. We reject it.

(2) The construction would result in an unlawful delegation of legislative power to the legislatures of other states, in violation of Or Const, Art III, § 1,[3] and Art IV, § 1(1),[4] or an unlawful adoption of foreign legislation. These arguments are not well taken.

■■ The test for determining whether a particular enactment is an unlawful delegation of legislative authority or a lawful delegation of factfinding power is whether the enactment is complete when it leaves the legislative halls. *Foeller v. Housing Authority of Portland,* 198 Or 205, 264, 256 P2d 752 (1953). A legislative enactment is complete if it contains a full

---

[3] Or Const, Art III, § 1, provides:

"The powers of the Government shall be divided into three seperate *[sic]* departments, the Legislative, the Executive, including the administrative, and the Judicial; and no person charged with official duties under one of these departments shall exercise any of the functions of another except as in this Constitution expressly provided." .

[4] Or Const, Art IV, § 1(1), provides:

"(1) The legislative power of the state, except for the initiative and referendum powers reserved to the people, is vested in a Legislative assembly, consisting of a Senate and a House of Representatives."

expression of legislative policy and sufficient procedural safeguards to protect against arbitrary application. *See State v. Sargent,* 252 Or 579, 580-584, 449 P2d 845 (1969); *Foeller v. Housing Authority of Portland, supra,* 198 Or at 266-268; *Corvallis Lodge No. 1141 v. OLCC,* 67 Or App 15, 19-20, 677 P2d 76 (1984).

Illustrative of these principles in the context of criminal law is *State v. Sargent, supra.* The issue in that case was whether the legislature had delegated its lawmaking power to an administrative agency, the Drug Advisory Council, by authorizing that agency to designate substances as "dangerous drugs." In *former* ORS 689.660, the legislature had provided:

> "The Drug Advisory Council may, after investigation, designate as a dangerous drug any drug which contains any quantity of:
>
> "* * * * *
>
> "(3) Any substance which the council finds as substantially affecting or altering consciousness, the ability to think, critical judgment, motivation, psychomotor coordination or sensory perception, and having potential for abuse when used without medical supervision."

The court reviewed the legislative history of the statute and determined that the purpose of subsection (3) was to allow the Drug Advisory Council to designate, as dangerous, drugs which might be discovered and made available to the public between legislative sessions. *State v. Sargent, supra,* 252 Or at 581-82. This legitimate legislative policy, the court determined, was fully expressed in ORS 689.660(3). The court stated:

> "The Assembly has said, in effect, that any drug is dangerous which produces the results set out in ORS 689.660. The law proscribing transactions in dangerous drugs has been determined by the legislature, and the only function left to the administrative body is that of enumerating the specific chemicals that fall within the statutory ban." 252 Or at 582.

The court thus concluded that ORS 689.660(3) did not unlawfully delegate legislative authority to the Drug Advisory Council.[5]

---

[5] The question of adequate procedural safeguards was not properly raised by the defendant, and the court did not discuss it. *State v. Sargent, supra,* 252 Or at 584.

■ In the present case, defendant contends that the reference in ORS 131.215(4) to "an offense in another jurisdiction" is an unlawful delegation of legislative authority to the legislatures of other states. Defendant is mistaken. The fundamental policy underlying the language of which defendant complains is expressed in the Commentary to the Proposed Oregon Criminal Procedure Code § 10, at 9-10 (1972). That policy is that the Oregon Criminal Code shall "appl[y] to criminal conduct intended to produce criminal results in some other jurisdiction, [but] activity that is lawful where engaged in shall not be penalized in this state * * *."

ORS 131.215(4) fully expresses that legitimate legislative policy. Under the terms of ORS 131.215(4), one may not be penalized in Oregon for soliciting conduct in another jurisdiction which is lawful in that jurisdiction at the time that the contemplated conduct is to be performed. Through ORS 131.215(4), the Oregon legislature, not the legislatures of other states, has determined the conditions under which this state will exercise its criminal jurisdiction. Although the law of another jurisdiction may change, the status of that law at any given time is a fact or circumstance upon which the legislature has chosen to make ORS 131.215(4) operative. *State v. Sargent, supra,* 252 Or at 581-82. Rather than representing a delegation of legislative authority, therefore, ORS 131.215(4) represents an exercise of that authority in the only manner practicable in the context of inchoate interstate crimes.

In sum, ORS 131.215(4) contains a full expression of legislative policy; we also think that it contains sufficient procedural protections to guard against arbitrary application. ORS 131.215(4), therefore, was complete when it was enacted and is not an improper delegation of legislative authority.

(3) The construction would render ORS 131.215(4) unconstitutionally vague, because the statute would not tell the reader whether he should consult the current forms of the laws of other jurisdictions or the forms that existed when ORS 131.215(4) became effective.[6]

---

[6] Defendant's reliance on Article I, section 10, of the Oregon Constitution as a due process clause is misplaced. The Oregon Constitution has no due process clause. *State ex rel Jones v. Crookham,* 296 Or 735, 740, 681 P2d 103 (1984); *see generally* Linde, "Without Due Process: Unconstitutional Law in Oregon," 49 Or L Rev 125 (1970).

■ Attempted delivery of a controlled substance was a crime in California both at the time when ORS 131.215(4) became effective on January 1, 1974, *see* Or Laws 1973, ch 836, § 359, and at the time of defendant's solicitation of Webb on June 5, 1984.[7] Defendant, therefore, did not have to speculate as to whether the reference in ORS 131.215(4) to "an offense in another jurisdiction" was to the law of California as it existed in 1974 or as it existed in 1984. Hence, as to defendant, ORS 131.215(4) was not unconstitutionally vague. Whether it would be vague as to some other, differently situated defendant is not before us. The trial court properly exercised jurisdiction over defendant.

Defendant asserts that the trial court erred in denying his motion for judgment of acquittal on the ground that his indictment failed to allege, and the state failed to offer proof, that possession, delivery or attempted delivery of a controlled substance was a crime in California. The indictment alleged:

> "The defendant, on or about the 5th day of June, 1984, * * * did unlawfully and knowingly solicit Timothy Webb to engage in conduct punishable as a felony, to-wit: possession and delivery of cocaine, a controlled substance, with the intent of causing Timothy Webb and others to engage in conduct constituting a crime punishable as a felony * * *."

---

[7] Cal Health and Safety Code § 11055(a) and (b)(4) (West Supp 1983-1984) is set forth, *supra,* at p 3. The quoted language is identical to that in effect January 1, 1974, except that the word "isomer" in paragraph 4 was added in 1984. *See* Cal Stat 1972, ch 1407, § 3; Cal Stat 1984, ch 1635, § 45.5. Cal Health and Safety Code § 11352 (West Supp 1983-1984) is set forth, *supra,* at p 4. The quoted language is identical to that in effect on January 1, 1974, except that at that time the only sentence prescribed for a violation of the section was three years' imprisonment. *See* Cal Stat 1973, ch 1078, § 4. The sentencing clause reached its present form in 1976. *See* Cal Stat 1976, ch 1139, § 67.

Cal Penal Code § 663 (West 1970) provides:

> "Any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was perpetrated by such person in pursuance of such attempt, unless the Court, in its discretion, discharges the jury and directs such person to be tried for such crime."

This provision has not been amended since its enactment in 1872. *See* Penal Code of California Annotated § 663 (Haymond-Burch 1872).

Cal Penal Code § 1159 (West 1970) provides:

> "The jury, or the judge if a jury trial is waived, may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, or of an attempt to commit the offense."

This provision reached its present form in 1951. *See* Cal Stat 1951, ch 1674, § 111.

In defendant's trial to the court, the state offered no proof, *i.e.,* evidence, that the acts alleged were a felony in California.

 The omissions of which defendant complains do not require reversal. As for the indictment, the law of another state is a matter for judicial notice, OEC 202,[8] and matters of judicial notice need not be alleged in a charging instrument. ORS 135.713.[9] As to the evidence, judicial notice fills the only alleged gap in the state's case and, in this trial to the court, that is enough.

Finally, defendant argues that the state failed to disprove beyond a reasonable doubt a defense he raised. We disagree.

Affirmed.

---

[8] Oregon Evidence Code § 202 provides in relevant part:

"Law judicially noticed is defined as:

"(1) The decisional, constitutional and public statutory law of Oregon, the United States and any state, territory or other jurisdiction of the United States.

"(2) Public and private official acts of the legislative, executive and judicial departments of this state, the United States, and any other state, territory or other jurisdiction of the United States.

"* * * * *

"(4) Regulations, ordinances and similar legislative enactments issued by or under the authority of the United States or any state, territory or possession of the United States."

[9] ORS 135.713 provides:

"Neither presumptions of law nor matters of which judicial notice is taken need be stated in an accusatory instrument."