Argued and submitted November 6, 1992, reversed and remanded May 12, 1993

# STATE OF OREGON,
*Appellant,*

*v.*

# LARRY ARNOLD KAST,
*Respondent.*

## (CR 0871 TM; CA A74299)

852 P2d 242

Kaye E. Sunderland, Assistant Attorney General, Salem, argued the cause for appellant. With her on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Robert J. McCrea, Eugene, waived appearance for respondent.

Before Rossman, Presiding Judge, and De Muniz and Leeson,* Judges.

ROSSMAN, P. J.

---

* Leeson, J., *vice* Buttler, J., retired.

## ROSSMAN, P. J.

Defendant was charged with unlawful possession of a Schedule II controlled substance, methylamine, in violation of ORS 475.992. The trial court sustained his demurrer to the indictment. The state appeals and we reverse.

ORS 475.005(6) defines "controlled substance" as

"a drug or its *immediate precursor* classified in Schedules I through V under the Federal Controlled Substances Act, 21 U.S.C. §§ 811 to 812, *as modified under ORS 475.035.* The use of the term 'precursor' in this subsection does not control and is not controlled by the use of the term 'precursor' in ORS 475.940, 475.950 and 475.955." (Emphasis supplied.)

ORS 475.035 grants authority to the Board of Pharmacy (Board) to modify the schedule. The statute provides, in part:

"(1) In arriving at any decision on changes in or addition to classification when changes or additions are proposed by the federal Drug Enforcement Administration or by any other reliable source, the board shall review the scientific knowledge available regarding the substance, its pharmacological effects, patterns of use and misuse, and potential consequences of abuse, and consider the judgment of individuals with training and experience with the substance.

"* * * * *

"(3) If a substance is an ingredient of a controlled substance, the ingredient shall be considered to be in the same schedule as that controlled substance. Substances which are precursors of the ingredient shall not be subject to control solely because they are precursors of the ingredient. The use of the term 'precursor' in this subsection does not control and is not controlled by the use of the term 'precursor' in ORS 475.940, 475.950 and 475.955."

The Board has promulgated OAR 855-80-022, Schedule II,[1] which includes "Substances," "Opiates," "Stimulants," "Depressants," "Hallucinogenic Substances," "Immediate precursors" and, under "Other substances":

"(a) Unless specifically excepted or listed in another schedule, any material, compound, mixture or preparation

---

[1] The rule has been amended. Our opinion addresses the rule in effect at the time of the indictment.

which contains any quantity of the following substances or their salts or stereoisomers having potential for abuse associated with the preparation of controlled substances:

"* * * * *

"(C)   Methylamine[.]"

■       Defendant waived appearance on appeal. In his demurrer he argued that, as a matter of law, methylamine cannot be a controlled substance. He contended that phenylacetone is the immediate precursor to methamphetamine and methylamine is the precursor of phenylacetone. Defendant's argument depends on a narrow reading of both the power of the Board and the substances which the Board may determine are subject to abuse. That approach does not comport with the language of ORS 475.005 and ORS 475.035.

Under ORS 475.005(6), the Board may list a "drug" and its "immediate precursor." Under ORS 475.005(13), "drug" includes

"(a)   Substances recognized as drugs in the official United States Pharmacopoeia, official Homeopathic Pharmacopoeia of the United States or official National Formulary, or any supplement to any of them;

"(b)   Substances intended for use in the diagnosis, cure, mitigation, treatment or prevention of disease in humans or animals;

"(c)   Substances (other than food) intended to affect the structure or any function of the body of humans or animals; and

"(d)   Substances intended for use as a component of any article specified in paragraph (a), (b) or (c) of this subsection; however, the term does not include devices or their components, parts, or accessories."

Under subsection 13(d), "drug" may include the precursor of an ingredient of a controlled substance, because it is a substance intended for "use as a component" of a recognized drug. Defendant contended, however, that that definition of "drug" is overruled by ORS 475.035(3). As noted above, that statute provides that "[s]ubstances which are precursors of the ingredient shall not be subject to control solely because they are precursors of the ingredient."

■ Defendant would read the statute to say that "substances which are *solely* precursors of the ingredient shall not be subject to control." However, that is not what the statute says. It says that substances shall not be subject to control "*solely* because they are precursors of an ingredient." That language does not eliminate from control all precursors of an ingredient. Rather, it provides that, unlike the automatic listing of an immediate precursor under ORS 475.005(6), a precursor of an ingredient cannot be listed as a controlled substance *only* on the basis that it is the precursor of an ingredient. It does not preclude listing the precursor of an ingredient when the factors set out in ORS 475.035(1) have been considered.

■ Defendant also argued that, in order to be listed, a substance must be subject to abuse, *i.e.*, "use in the body." He cites ORS 475.035(1) to support that proposition. However, ORS 475.005(1)[2] does not define abuse as defendant states, and "potential consequences of abuse" is one of the factors that may be considered in determining whether a substance should be listed as a controlled substance. OAR 855-80-022(7)(a) incorporates methylamine within the category, because the substance has the potential for abuse associated with the preparation of controlled substances. The trial court erred in concluding that, as a matter of law, methylamine could not be listed as a controlled substance.

■ Defendant also argued that there are no standards in ORS 475.035 to support a constitutional delegation of legislative power to the Board, and, therefore, the Board's rule listing methylamine as a controlled substance is invalid. Although the legislature may not delegate its power to make law, it may delegate to an agency the power to determine the existence of facts or circumstances under which the law will become operative. *State v. Sargent*, 252 Or 579, 580, 449 P2d 845 (1969). The statutory scheme must contain standards that circumscribe the agency's exercise of the delegated powers. *State v. Long*, 110 Or App 599, 602, 823 P2d 1031, *aff'd* 315 Or 95, 843 P2d 420 (1992).

---

[2] ORS 475.005(1) provides:

"(1) "Abuse" means the repetitive excessive use of a drug short of dependence, without legal or medical supervision, which may have a detrimental effect on the individual or society."

In *State v. Sargent, supra,* the Supreme Court discussed the analogous delegation of authority to the Drug Advisory Council to designate "dangerous drugs" under *former* ORS 475.010(1). It noted the practical need to delegate authority in the area of regulating controlled substances where new developments are constant. It concluded:

> "In view of the clear legislative denunciation of traffic in dangerous drugs, and in view of the equally clear direction to the appropriate agency to discover and publish the names of drugs that will produce the effects which the legislature has declared to be a danger to the public, we believe that the seller of drugs is not denied due process of law when he is required to consult the regulations before he undertakes to market a drug." 252 Or at 584.

The court held that the delegation did not violate either the state or federal constitution.

ORS 475.005 provides the definitional parameters within which the Board is authorized to add new substances after consideration of the factors set out in ORS 475.035(1). Those guidelines, along with the limitation in ORS 475.035(3) and the requirement in ORS 475.035(4) that the Board shall administer its authority in accordance with the Administrative Procedures Act, sufficiently circumscribe the power of the Board to withstand constitutional scrutiny.

Defendant further argued that the authority to regulate precursors of ingredients has been delegated to the Department of State Police. Under ORS 475.945, the Department of State Police may adopt rules adding substances to the "precursor substances," listed in ORS 475.940. ORS 475.940 includes methylamine. It may also establish a form for reporting transactions that involve those substances. However, nothing in those statutes provides that the State Police's authority to regulate precursor substances is exclusive.[3] Both ORS 475.005(6) and ORS 475.035(3) specifically note that "precursor," as that term is used in ORS 475.940, ORS 475.950 and ORS 475.955, does not control what constitutes a "controlled substance." We agree with the state that the Board and the State Police have separate duties and functions

---

[3] Any claim by a defendant of compliance with the regulations of the State Police is a matter of defense, not a claim that may be reached on a demurrer.

relating to precursor substances and that the Board is not precluded from regulating methylamine.

Reversed and remanded.