CITY OF DAMASCUS;
and Gene Green, in his official capacity as
Pro Tem City Manager for the City of Damascus,
*Petitioners,*

*v.*

Henry R. BROWN, Jr.
and Valerie E. Brown,
*Respondents.*

City of Damascus No. 14003
A156920 (Control)

CITY OF DAMASCUS;
and Gene Green, in his official capacity as
Pro Tem City Manager for the City of Damascus,
*Petitioners,*

*v.*

Jeffry Kent OLSON
and Ardith Elane Olson,
*Respondents.*

City of Damascus No. 14004
A156921

CITY OF DAMASCUS;
and Gene Green, in his official capacity as
Pro Tem City Manager for the City of Damascus,
*Petitioners*
*Cross-Respondents,*

*v.*

GDI NEW HORIZONS, LLC,
an Oregon limited liability company,
*Respondent*
*Cross-Respondent,*
*and*

Patricia A. DE YOUNG,
a citizen of the City of Damascus,
*Cross-Petitioner.*
City of Damascus No. 14005
A156922

CITY OF DAMASCUS;
and Gene Green, in his official capacity as
Pro Tem City Manager for the City of Damascus,
*Petitioners*
*Cross-Respondents,*

*v.*

Lowell E. PATTON;
Oregon Lumber Export Company Pension Trust;
and Deborah L. Francis,
*Respondents*
*Cross-Respondents,*

*and*

Patricia A. De YOUNG,
citizen of the City of Damascus,
*Cross-Petitioner.*

City of Damascus No. 14006
A156923

CITY OF DAMASCUS;
and Gene Green, in his official capacity as
Pro Tem City Manager for the City of Damascus,
*Petitioners,*

*v.*

Jerry G. SCHOFIELD
and Kimberly J. Schofield,
*Respondents.*

City of Damascus No. 14007
A156963

CITY OF DAMASCUS;
and Gene Green, in his official capacity as
Pro Tem City Manager for the City of Damascus,
*Petitioners,*

*v.*

KAYSER FAMILY, LLC,
an Oregon limited liability company;
and Cozzetto Family, LLC,
an Oregon limited liability company,
*Respondents.*

City of Damascus No. 14008
A156964

CITY OF DAMASCUS;
and Gene Green, in his official capacity as
Pro Tem City Manager for the City of Damascus,
*Petitioners,*

*v.*

Ioan VACARIU
and Emilia Vacariu,
*Respondents.*

City of Damascus No. 14011
A156982

CITY OF DAMASCUS;
and Gene Green, in his official capacity as
Pro Tem City Manager for the City of Damascus,
*Petitioners,*

*v.*

Marilyn J. BRUNDIDGE,
*Respondent.*

City of Damascus No. 14009
A156983

CITY OF DAMASCUS;
and Gene Green, in his official capacity as
Pro Tem City Manager for the City of Damascus,
*Petitioners,*

*v.*

Willy KISSINGER
and Hulta Kissinger,
*Respondents.*

City of Damascus No. 14010
A156984

CITY OF DAMASCUS;
and Gene Green, in his official capacity as
Pro Tem City Manager for the City of Damascus,
*Petitioners,*

*v.*

Alfred G. WETZEL
and Joyce D. Wetzel,
Trustees of the Wetzel Family Trust,
*Respondents.*

City of Damascus No. 14012
A157037

CITY OF DAMASCUS;
and Gene Green, in his official capacity as
Pro Tem City Manager for the City of Damascus,
*Petitioners,*

*v.*

Robert SHANNON
and Patricia Shannon,
Trustee of the Family Trust of
Robert E. Shannon and Patricia L. Shannon,
*Respondents.*

City of Damascus No. 14013
A157042

CITY OF DAMASCUS;
and Gene Green, in his official capacity as
Pro Tem City Manager for the City of Damascus,
*Petitioners,*

*v.*

Michael S. DESOUSA,
*Respondent.*

City of Damascus No. 14014
A157043

CITY OF DAMASCUS;
and Gene Green, in his official capacity as
Pro Tem City Manager for the City of Damascus,
*Petitioners,*

*v.*

Vivian F. MEYER,
Trustee of the Vivian Meyer Revocable Living Trust,
*Respondent.*

City of Damascus No. 14015
A157044

CITY OF DAMASCUS;
and Gene Green, in his official capacity as
Pro Tem City Manager for the City of Damascus,
*Petitioners,*

*v.*

Sharon E. HUFFMAN,
*Respondent.*

City of Damascus No. 14016
A157045

CITY OF DAMASCUS;
and Gene Green, in his official capacity as
Pro Tem City Manager for the City of Damascus,
*Petitioners,*

*v.*

George Quentin HAMILTON
and Vivian Kaye Hamilton,
*Respondents.*

City of Damascus No. 14017
A157046

CITY OF DAMASCUS;
and Gene Green, in his official capacity as
Pro Tem City Manager for the City of Damascus,
*Petitioners,*

*v.*

Gerhard SCHAFER
and Wanda Schafer,
*Respondents.*

City of Damascus No. 14018
A157047

CITY OF DAMASCUS;
and Gene Green, in his official capacity as

Pro Tem City Manager for the City of Damascus,
*Petitioners,*

*v.*

Fred L. SIRI
and Rachel Siri,
Trustees of the Fred L. Siri and Rachel Siri
Revocable Living Trust U/D/T June 19, 2007,
*Respondents.*

City of Damascus No. 14019
A157130

CITY OF DAMASCUS;
and Gene Green, in his official capacity as
Pro Tem City Manager for the City of Damascus,
*Petitioners,*

*v.*

Harold JOHNSON
and Lisa Johnson,
*Respondents.*

City of Damascus No. 14020
A157166

CITY OF DAMASCUS;
and Gene Green, in his official capacity as
Pro Tem City Manager for the City of Damascus,
*Petitioners,*

*v.*

Donald J. HANNA, Jr.;
and Russme Properties, LLC,
an Oregon limited liability company,
*Respondents.*

City of Damascus No. 14021
A157167

CITY OF DAMASCUS;
and Gene Green, in his official capacity as
Pro Tem City Manager for the City of Damascus,
*Petitioners,*

*v.*

Ronald D. McMURRY
and Adele Richey McMurry,
trustees or the successors in Trust of
the McMurry Living Trust dated August 10, 1998,
*Respondents.*

City of Damascus No. 14022
A157345

CITY OF DAMASCUS;
and Gene Green, in his official capacity as
Pro Tem City Manager for the City of Damascus,
*Petitioners,*

*v.*

Theodore J. HOLBOKE
and Jean A. Holboke, individually and as
Trustees of the Holboke Family Living Trust
dated August 6, 2010,
*Respondents.*

City of Damascus No. 14023
A157455

CITY OF DAMASCUS;
and Gene Green, in his official capacity as
Pro Tem City Manager for the City of Damascus,
*Petitioners,*

*v.*

Fred C. ANDEREGG
and Beulah Anderegg, individually and as
Co-Trustees of the Anderegg Joint Living Trust,
*Respondents.*

City of Damascus No. 14024
A157456

CITY OF DAMASCUS;
and Gene Green, in his official capacity as
Pro Tem City Manager for the City of Damascus,
*Petitioners,*

*v.*

George D. VASS
and Loretta A. Vass,
*Respondents.*

City of Damascus No. 14025
A157457

337 P3d 1019

Timothy V. Ramis and Peter O. Watts argued the cause for petitioners-cross-respondents. On the brief were Edward H. Trompke, Timothy V. Ramis, and Jordan Ramis PC.

Gregory A. Chaimov argued the cause for respondents Henry R. Brown, Jr., and Valerie E. Brown. With him on the brief was Davis Wright Tremaine LLP.

Michael B. Merchant argued the cause for respondent-cross-respondent GDI New Horizons, LLC. With him on the brief were Margaret E. Schroeder and Black Helterline LLP.

William C. Cox argued the cause and filed the brief for respondents-cross-respondents Lowell E. Patton, Oregon Lumber Export Company Pension Trust, and Deborah L. Francis.

Denise G. Fjordbeck, Attorney-in-Charge, argued the cause for *amicus curiae* Department of Land Conservation and Development. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

J. Michael Harris and Reeves, Kahn, Hennessy & Elkins filed the brief for cross-petitioner.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

ARMSTRONG, P. J.

## ARMSTRONG, P. J.

This case concerns the constitutionality of a bill passed by the 2014 Oregon Legislative Assembly, House Bill (HB) 4029, which permits landowners with property located on the boundary of the City of Damascus to withdraw that property from the jurisdiction of the city. Under the legislation, the city is required to approve all applications to withdraw property from the city, and, if the city refuses to issue the required approval, the withdrawal of the property is "deemed complete" on the 30th day after the city received the application. Petitioners, the City of Damascus and the City of Damascus Pro Tem City Manager, Gene Green (collectively, city petitioners), filed petitions for judicial review of 23 withdrawal applications that have been deemed complete under HB 4029. Petitioner De Young, a resident of Damascus, also filed timely petitions for judicial review in two of those cases. Respondents on the petitions are the landowners who submitted the withdrawal applications to the city. We consolidated all of the petitions for review and, pursuant to the stipulation of the parties, designated three lead cases to address in this opinion—*City of Damascus v. Brown* (A156920); *City of Damascus v. GDI New Horizons, LLC* (A156922); and *City of Damascus v. Patton* (A156923). The city petitioned for judicial review in all three cases, and De Young petitioned for judicial review in the GDI New Horizons (GDI) and Patton cases. All of the remaining petitions were held in abeyance to abide the outcome of the three lead cases. Accordingly, we are disposing of the balance of the petitions in accordance with our disposition of the three lead cases.

Petitioners assert that HB 4029 is an unconstitutional delegation of governmental authority to private individuals and violates the city's and its residents' constitutionally protected home-rule authority. Additionally, petitioners argue that the Patton property does not meet the criteria under HB 4029 for withdrawal and, thus, that the withdrawal was clearly in error. After consolidating the cases, we requested that the parties also address whether the petitions present us with a justiciable controversy, including whether petitioners have standing, whether the petitions are moot, and whether the parties are adverse.

We conclude that the city petitioners do not have standing under HB 4029 to petition for judicial review because the city and city manager are not part of "the public" that is permitted to appear and be heard at a public hearing on property withdrawals. *See* Or Laws 2014, ch 75, §§ 2(3), 3(1). Accordingly, we dismiss the city petitioners' petitions for judicial review.[1] De Young, however, does have standing under HB 4029, and her petitions for judicial review in GDI and Patton are not moot and establish the required adversity. On the merits of the petitions in GDI and Patton, we conclude that HB 4029 is an unconstitutional delegation of legislative authority to private individuals because the legislation delegates to interested landowners the authority to determine the city's boundary and to find the facts necessary to make that determination without imposing any meaningful procedural safeguards on the landowners' fact-finding function. Accordingly, we reverse the GDI and Patton withdrawals.

## I.  BACKGROUND

The City of Damascus incorporated in 2004 and adopted its city charter in 2005. As a new city, Damascus was required to adopt and have acknowledged by the Land Conversation and Development Commission (LCDC) a comprehensive plan and implementing land use regulations within four years of its incorporation. *See* ORS 197.757. It is undisputed that the city did not meet that deadline and, as of the preparation of this opinion, had not yet adopted a comprehensive plan and implementing land use regulations to submit to LCDC for review. *See* http://www.oregon.gov/LCD/pages/damascus_acknowledgement.aspx (accessed Sept 18, 2014).

The 2014 Legislative Assembly passed HB 4029 in response to the development standstill in Damascus caused by the city's inability to obtain an acknowledged comprehensive plan and land use regulations. *See, e.g.,* Audio Recording, Senate Floor Debate, HB 4029, Feb 27, 2014, at 28:11 (statement of Sen Arnie Roblan), https://olis.leg.state.or.us/liz/2014R1/2014-02-27 (accessed Sept 18, 2004). In

---

[1] Because the city petitioners are the only petitioners in the 20 cases held in abeyance to abide the outcome of the three lead cases, we also dismiss those petitions.

brief, HB 4029 permits landowners with property located on the boundary of the City of Damascus to withdraw their property from the jurisdiction of the city and promptly seek annexation into another nearby city.[2]

---

[2] HB 4029 provides in full:

"SECTION 1. (1) As used in sections 1 and 2 of this 2014 Act:

"(a) 'Same ownership' includes ownership, singly or in any combination, by an individual, other individuals related to the individual by blood, marriage or adoption, and entities owned, directly or indirectly, by the individual or such related individuals.

"(b) 'Tract' means one or more contiguous lots or parcels of land under the same ownership and includes any portion of the contiguous lots or parcels of land under the same ownership less than the whole.

"(2) Notwithstanding ORS 222.460, the owner of a tract within the boundaries of a city may withdraw the tract from the city if:

"(a) The city is located within Metro and was incorporated after January 1, 2000, and before January 1, 2005;

"(b) The comprehensive plan and land use regulations of the city were not acknowledged within four years after incorporation, as required under ORS 197.757, and remain unacknowledged at the time the owner makes the filing for withdrawal required under subsection (3) of this section; and

"(c) Any portion of the tract is located on the boundary of the city and is within one-half mile of another city.

"(3)(a) To withdraw a tract from the city under this section, the owner must:

"(A) Obtain a letter from the Department of Land Conservation and Development confirming that the city's comprehensive plan and land use regulations were not acknowledged in the four-year period following incorporation. The department shall provide the letter within 30 days after the department receives a written request from the owner of the tract.

"(B) File a written statement with the city in person or by registered mail, return receipt requested, and a copy of the written statement with Metro and the department.

"(b) The written statement must include:

"(A) The name of the city from which the tract is to be withdrawn;

"(B) A declaration by the owner of the owner's intention to withdraw the tract from the city;

"(C) A copy of a deed, preliminary title report, tax record or similar document showing ownership of the tract;

"(D) A legal description of the tract to be withdrawn;

"(E) A copy of the cadastral map maintained by the county assessor that shows the location of the tract; and

"(F) A copy of the letter from the department obtained pursuant to paragraph (a)(A) of this subsection.

"(4) An enforcement order under ORS 197.319 to 197.335 is not a prerequisite for the provision of the letter by the department as required under subsection (3)(a)(A) of this section or to the withdrawal of the tract under this section.

HB 4029 became effective March 19, 2014. Or Laws 2014, ch 75, § 5. As permitted under HB 4029, landowners with property located near the boundary of the city began

"SECTION 2. (1) Notwithstanding any other notice requirements in the city code, within 10 days after receipt of the written statement required under section 1(3) of this 2014 Act, the legislative body of the city shall cause notice of a public hearing on the question of the withdrawal of the tract to be held within 30 days after receipt of the written statement.

"(2) For two successive weeks before the date of the public hearing, the notice shall be published once each week in a newspaper of general circulation in the city and posted in four public places in the city.

"(3) At the public hearing, the public may appear and be heard on the question.

"(4) After receiving testimony at the public hearing, the legislative body of the city shall withdraw the tract from the city by an order or resolution adopted during a work session at, or immediately after, the close of the public hearing.

"(5) Within two business days after the legislative body of the city adopts the order or resolution, the city shall report the change in its boundaries to Metro and the Department of Land Conservation and Development.

"(6) If the city refuses or fails to adopt the order or resolution within the 30-day period described in subsection (1) of this section:

"(a) The withdrawal of the tract is deemed complete.

"(b) Metro shall report the change in the boundaries of the city to the county clerk and county assessor of the county in which the city is located and the Department of Revenue, as required under ORS 222.010 and 308.225, respectively.

"(7) On and after the effective date of the order or resolution, or completed withdrawal:

"(a) ORS 222.460(10) applies to the withdrawn tract.

"(b) The withdrawn tract is freed from any urban planning agreement or other local governmental agreement, document or policy that could prevent the tract from being annexed by another jurisdiction.

"(8) The withdrawal of territory under this section:

"(a) Is not a land use decision or a limited land use decision subject to the exclusive jurisdiction of the Land Use Board of Appeals under ORS 197.805 to 197.855.

"(b) If completed by order or resolution, is not subject to referral to the electors.

"(c) Is not subject to ORS 222.040.

"(9) A city from which a tract has been withdrawn under this section may not annex the tract for a period of 10 years following the withdrawal unless the owner of the tract submits a petition to the legislative body of the city seeking annexation of the tract.

"SECTION 3. (1) Any person who testified at a public hearing under section 2(3) of this 2014 Act may seek judicial review of a withdrawal order or resolution adopted, or a withdrawal completed without order or resolution, under section 2(4) or (6) of this 2014 Act, respectively, by filing a petition in the Court of Appeals.

in early April to file written statements to withdraw their land from the city. The Browns filed their withdrawal statement with the city on April 2, 2014; GDI filed its statement on April 3, 2014; and Patton filed his statement on April 7, 2014. Pursuant to HB 4029, the city scheduled a May 1, 2014, "public hearing on the question of the withdrawal of the tract" from the city with respect to all three written statements. At the hearing, the city attorney made a statement and submitted written testimony on behalf of the city and city manager contesting the constitutionality of HB 4029. During the public testimony portion of the hearing, which was combined for all three applicants, De Young appeared and testified in opposition to landowners withdrawing from the city because it would mean the end of the city.

Following the hearing, on May 5, 2014, the city mailed to each respondent a City Council order that included findings that HB 4029 is unconstitutional and that "decline[d] to adopt an [o]rder granting withdrawal to the applicant." Because the city did not approve the withdrawals, the withdrawals were "deemed complete" 30 days after respondents had filed their applications. On May 20, 2014, the city petitioners filed petitions for judicial review of the withdrawal of the Brown, GDI, and Patton properties from the city. De Young filed on May 22, 2014, her own petitions for judicial review of the withdrawal of the GDI and

---

"(2)(a) Except as provided in paragraph (b) of this subsection, ORS 197.850, 197.855 and 197.860 apply to judicial review under this section.

"(b) Notwithstanding ORS 197.850(9), the court may reverse or remand the action of the city only if the court finds that:

"(A) The withdrawal was clearly in error;

"(B) There is a basis to vacate the withdrawal for the reasons for which an arbitration award may be vacated, modified or corrected under ORS 36.705(1)(a) to (d) or 36.710; or

"(C) The withdrawal was unconstitutional.

"SECTION 4. Sections 1 to 3 of this 2014 Act are repealed on January 2, 2025.

"SECTION 5. This 2014 Act being necessary for the immediate preservation of the public peace, health and safety, an emergency is declared to exist, and this 2014 Act takes effect on its passage."

Or Laws 2014, ch 75. HB 4029 has not yet been placed into the Oregon Revised Statutes, nor does the bill designate an ORS chapter, but it likely will be codified in ORS chapter 222. *See* 2014 Update to Volume 6 (Chapters 201-260) 2013 Oregon Revised Statutes, Table 2.

Patton properties and makes the same arguments as the city petitioners.[3]

## II. JUSTICIABILITY

In an order to show cause to the parties, we requested that the parties brief the justiciabiliy of these consolidated cases along with their merits. For a case to be justiciable, petitioners "must have standing *and* the controversy must not be moot." *Couey v. Brown*, 257 Or App 434, 438, 306 P3d 778 (2013), *rev allowed*, 354 Or 735 (2014) (citing *Yancy v. Shatzer*, 337 Or 345, 349, 97 P3d 1161 (2004)) (emphasis in original). "Standing deals with *who* can bring a controversy before the court * * *. Mootness, on the other hand, deals with *what controversies* can be brought before the court." *Id.* (citing *Kellas v. Dept. of Corrections*, 341 Or 471, 476-77, 477 n 3, 145 P3d 139 (2006)) (emphasis in original). Additionally, and close in concept to mootness, to be justiciable, the interest of the parties must be adverse. *Kellas*, 341 Or at 486.

We conclude that the city petitioners do not have standing to bring their petitions for judicial review. However, we conclude that De Young does have standing to bring her petitions for judicial review in GDI and Patton and further conclude that those cases are not moot and that the parties' positions in them are sufficiently adverse. Accordingly, we dismiss the city petitioners' petitions for review but address the merits of De Young's petitions in GDI and Patton.

### A. *Nature of the order on review*

Before we can determine whether petitioners have presented us with a justiciable controversy, we must identify what petitioners are asking us to review—a point on which the parties do not agree. As required by ORS 197.850(4), the city petitioners identified the "nature" of the order to be reviewed in each case as one "defined by section 2(6) of Chapter 75 Oregon Laws 2014 as 'a withdrawal completed without order or resolution, under section 2(4) or (6) of this

---

[3] The De Young petitions in GDI and Patton are denominated "cross-petitions" due to the timing of their filing after the city petitioners' petitions and because De Young names the city petitioners as respondents. However, De Young filed her own petitions for judicial review within the 21 days permitted for such petitions, and her arguments are aligned with the city petitioners. Accordingly, we refer to the city petitioners and De Young collectively as petitioners throughout this opinion.

2014 Act'." Similarly, in her petitions in GDI and Patton, De Young stated that, "[a]lthough Respondent City declined to adopt an order granting withdrawal to Respondent Landowners, the nature of the order is defined by Section 3(1), of Chapter 75 Oregon Laws 2014 (HB 4029) as 'a withdrawal completed without order or resolution, under section 2(4) or (6) of this 2014 Act.'"

Respondents take issue with petitioners' characterization of what we are being asked to review because petitioners also identified in their respective petitions the city orders as the final orders on review, and, in their briefs, petitioners identify the acts on review to be respondents' decision to withdraw their property from the city. The distinction makes a difference, respondents argue, because it affects our justiciability analysis. Respondents argue that the city cannot seek review of its own orders (no standing) and that De Young is not adverse to the city orders. Additionally, respondents argue that petitioners cannot challenge as unconstitutional the act of private respondents applying for withdrawal from the city, because their act is not a governmental act.

The answer to the question of what we are reviewing in these cases is not entirely found in either of the parties' two viewpoints. What petitioners are asking us to review necessarily is the withdrawal of respondents' properties from the city by operation of law—the withdrawals being "deemed complete"—and not the act of respondents in applying for withdrawal of their property under HB 4029.[4] Petitioners also could not be asking us to review the city's

---

[4] That conclusion also resolves GDI's related argument that, if petitioners seek review of respondents' decision to withdraw their land from the city, then petitioners' petitions were not timely filed, and we have no jurisdiction. *See* ORS 197.850(3) (providing that a petition must be filed "within 21 days following the date the board delivered or mailed the order upon which the petition is based" and that timely filing and service is "jurisdictional and may not be waived or extended"). Because petitioners seek review of the withdrawals being "deemed complete," which did not occur until 30 days after the city received respondents' applications, *see* Or Laws 2014, ch 75, § 2(6), the operative date from which to judge the timeliness of petitioners' petitions is not the date respondents' filed their applications with the city but 30 days from that date. The Brown application was deemed complete as of May 2, 2014; the GDI application was deemed complete as of May 3, 2014; and the Patton application was deemed complete as of May 7, 2014. Petitioners all filed their respective petitions in each case within 21 days of those dates. Accordingly, petitioners timely sought judicial review.

orders, because those orders had no force or effect under HB 4029. The review that petitioners seek is permitted by HB 4029.

Under HB 4029, a city order approving a withdrawal and a withdrawal completed without an order are both subject to judicial review. Or Laws 2014, ch 75, § 3(1) ("Any person who testified at a public hearing under section 2(3) of this 2014 Act may seek judicial review of a withdrawal order or resolution adopted, or a withdrawal completed without order or resolution, under section 2(4) or (6) of this 2014 Act, respectively, by filing a petition in the Court of Appeals."). Thus, petitioners are correct that they can seek review of the withdrawals being "deemed complete,"[5] and they correctly identified in their petitions that action as the nature of the order that they seek to have reviewed. *See* ORS 197.850(4) ("The petition must state the nature of the order the petitioner desires reviewed."). It does not matter that the city issued orders declining to adopt orders approving the respondents' withdrawal applications because, under HB 4029, those orders have no effect on respondents' applications.

Having identified *what* is at issue on judicial review, we turn to *who* is permitted to bring a petition for judicial review under HB 4029 and whether any petitioner falls within that category of persons.

B.  *Standing*

To seek judicial review, a petitioner must have standing. "'Standing' is a legal term that identifies whether a party to a legal proceeding possesses a status or qualification necessary for the assertion, enforcement, or adjudication of legal rights or duties." *Kellas*, 341 Or at 476-77. "The source of law that determines that question is the statute

---

[5] We conclude, and none of the parties assert otherwise, that Metro's role in the boundary change is only ministerial—it reports the already-completed withdrawal of the property. Or Laws 2014, ch 75, § 2(6)(b) ("Metro shall report the change in the boundaries of the city * * *."). Accordingly, the reporting of the boundary change cannot be the trigger for review because, at that point, the withdrawal of the property is already "completed" as contemplated by the judicial review section of HB 4029. *Id.* § 3(1) ("Any person who testified at a public hearing * * * may seek judicial review of * * * a withdrawal completed without order or resolution * * *.").

that confers standing in the particular proceeding that the party has initiated, 'because standing is not a matter of common law but is, instead, conferred by the legislature.'" *Id.* at 477 (quoting *Local No. 290 v. Dept. of Environ. Quality*, 323 Or 559, 566, 919 P2d 1168 (1996)). Thus, we must look to HB 4029 to determine whether petitioners have standing to seek judicial review. In doing so, we look at each petitioner individually—the city, the city manager, and De Young—to determine if each, or any, of them has standing to pursue their petitions.

Section 3(1) of HB 4029 provides that "[a]ny person who testified at a public hearing under section 2(3) of this 2014 Act may seek judicial review of a withdrawal order or resolution adopted, or a withdrawal completed without order or resolution, under section 2(4) or (6) of this 2014 Act, respectively, by filing a petition in the Court of Appeals." Although section 3(1) uses the words "any person" in its grant of standing, it circumscribes the universe of "any person" to those persons who testified under section 2(3). Section 2(3) of HB 4029 provides that, "[a]t the public hearing, the public may appear and be heard on the question." Thus, to determine who is granted standing under HB 4029, our focus must be on who "the public" is who may appear and be heard at the public hearing on a property withdrawal. As a result, the parties' arguments regarding the appropriate definition of "person" to apply to section 3(1) is not helpful to our inquiry.

"[T]he public" is not defined by HB 4029, nor is it defined in any other potentially applicable statute. Public, when used as a noun, as in HB 4029, means "2 a : an organized body of people : COMMUNITY, NATION * * * b : the people as a whole : POPULACE, MASSES * * *." *Webster's Third New Int'l Dictionary* 1836 (unabridged ed 2002). We do not discern that, by using the word "public," the legislature intended to include the city itself as an entity that could testify at the public hearing and, thus, obtain standing to seek judicial review. As the definition implies, the noun "public" encompasses the people of a community, or the people as a whole; not the people's representative body, which typically would be identified as a "public body" or by a similar term. Indeed, allowing the city to contest landowner withdrawals

by judicial review would be inapposite to the very purpose of HB 4029, which was an express effort by the legislature to allow landowners to withdraw their property from the city in such a manner that the city could not prevent it. Thus, we conclude that the city, as the city, does not have standing under HB 4029 to seek judicial review of a withdrawal of property from the city that is "deemed complete" under that law.[6]

We next address whether the city manager, acting in his official capacity, is a member of "the public" such that he could obtain standing to seek judicial review by testifying at the public hearing. Although the city manager, as an individual, is a member of the public who could testify at a public hearing under HB 4029, here, the city manager has petitioned for judicial review only "in his official capacity" as city manager for the city. In that capacity, he is the "administrative head of the [c]ity government," 2005 City of Damascus Charter, Art VIII, § 34, and, thus, when he takes an action "in his official capacity," he is acting on behalf of the city and not as an individual member of the public. As a result, the city manager does not have standing to seek judicial review because the city does not have standing.

There can be no doubt, however, that De Young is a member of the public who was permitted to appear and "be heard on the question" at the combined public hearing on respondents' withdrawal applications. Respondents do not dispute that she is. Respondents contend, however, that De Young does not have standing because (1) her "cross-petitions" should be dismissed if the city petitioners' petitions are dismissed, citing *Ludwick v. Yamhill County*, 71 Or App 34, 691 P2d 515 (1984), *opinion withdrawn*, 71 Or

---

[6] The original text of the bill provided that, "[a]t the public hearing, residents of the city may appear and be heard on the question." HB 4029, § 2(3) (2014) (as introduced). In adopted House amendments, and without comment at the committee work session on those amendments or at any of the public hearings, "residents of the city" was replaced with "the public." *See* HB 4029, § 2(3) (enrolled). That change indicates that the legislature chose to expand the universe of people who would be permitted to speak at a public hearing to those who may want to be heard on the issue but who were not residents of the Damascus. It does not, however, indicate a legislative intention to include the city as a person that can seek judicial review.

App 837, 708 P2d 1147 (1985); and (2) she did not "testify" as required by HB 4029 because her testimony did not pertain to the bases on which we may reverse and remand a withdrawal decision on judicial review.

First, as noted above, although the De Young petitions in GDI and Patton have been denominated "cross-petitions," they were properly filed as initiating petitions for judicial review within the 21 days permitted for such petitions under ORS 197.850(3). Thus, our discussion in our withdrawn opinion in *Ludwick* has no application here because De Young's petitions satisfy the jurisdictional filing requirement. *See Ludwick*, 71 Or App at 37-38 (holding that a cross-petition must be dismissed along with the initiating petition because *no one* had timely filed a notice of intent to appeal, a jurisdictional requirement); *Friends of the Hood River Waterfront v. City of Hood River*, 263 Or App 80, 82 n 1, 326 P3d 1229 (2014) (cross-petition timely when filed within 21-day period imposed by ORS 197.850(3)).

We also reject GDI's suggestion that De Young's petition should be dismissed along with the petition of the city petitioners because she "simply incorporates the city's arguments" into her opening brief. De Young filed a brief that, "[i]n the interest of economy and to avoid duplication of argument," expressly adopted and incorporated arguments made by the city petitioners in their opening brief. De Young is not only permitted to do so under our rules of appellate procedure but is expressly encouraged to do so. ORAP 5.77(1) ("In a case involving more than one party on the same side, including cases consolidated on appeal, the court discourages the filing of briefs that duplicate arguments made in another brief in the same case and encourages parties to file joint briefs or to adopt to the extent practicable a brief filed by another party in the same case."); ORAP 5.77(4)(a) ("A party who concurs with all or part of a brief filed by another party and who has no other position to assert may adopt the other party's brief by filing a brief adopting in whole or in part the brief of another party. If a party adopts only part of the brief of another, the brief shall identify the part of the brief of the other party being adopted.").

Second, we conclude that De Young did "testify" as required by HB 4029 to have standing to bring her petitions. Respondents argue that, for the term "testify" to have meaning, it must relate to the three bases on which we may reverse or remand a withdrawal on judicial review:

"(b)   Notwithstanding ORS 197.850(9), the court may reverse or remand the action of the city only if the court finds that:

"(A)   The withdrawal was clearly in error;

"(B)   There is a basis to vacate the withdrawal for the reasons for which an arbitration award may be vacated, modified or corrected under ORS 36.705(1)(a) to (d) or 36.710; or

"(C)   The withdrawal was unconstitutional."

Or Laws 2014, ch 75, § 3(2). Respondents reason that, because De Young did not direct her testimony at the public hearing to one of those three bases, she did not "testify." We do not agree with respondents' assessment. Section 3(1), which sets out who has standing to seek review, is not tied to section 3(2), which sets out the statutes governing our review and the bases on which we may reverse or remand a withdrawal. Instead, section 3(1) refers solely to section 2(3), which requires only that the member of the public have appeared and been heard at the public hearing "on the question" of the property withdrawal. De Young appeared and was heard at the public hearing on the question of GDI's and Patton's withdrawal of property from the city. That is all that was required under HB 4029 for De Young to have standing to bring her petitions for judicial review in GDI and Patton.

Because we have concluded that the city petitioners do not have standing, we must dismiss the city petitioners' petitions for judicial review in Brown, GDI, and Patton. As a result, we must also dismiss the petitions in the remaining 20 consolidated cases because only the city petitioners petitioned for judicial review in those cases. De Young has standing to pursue her petitions for judicial review of the GDI and Patton withdrawals.

## C. *Mootness*

Standing is not the only inquiry that we must address to determine if this matter is justiciable; we must also address whether the case has become moot.

> "A case is moot if a decision by the court 'no longer will have a practical effect on or concerning the rights of the parties.' *Brumnett v. PSRB*, 315 Or 402, 406, 848 P2d 1194 (1993). 'For example, a case becomes moot when an event occurs that "render[s] it impossible for the court to grant effectual relief.'" *Hamel [v. Johnson]*, 330 Or [180, 184, 998 P2d 661 (2000)] (quoting *Greyhound Park v. Ore. Racing Com.*, 215 Or 76, 79, 332 P2d 634 (1958)) (brackets in *Hamel*). The party that seeks dismissal—here, respondents—has the burden to establish that the case is moot. *Brumnett*, 315 Or at 407."

*WaterWatch of Oregon, Inc. v. Water Resources Dept.*, 259 Or App 717, 726, 316 P3d 330 (2013), *rev allowed*, 355 Or 317 (2014).

Respondents argue that this matter is moot, as least with regard to GDI, because the Oregon Department of Revenue has issued a "Notice to Taxing Districts" under ORS 308.225, notifying the city that the department has approved the description and maps of the boundary change with respect to GDI. Respondents argue that, because the boundary change process has been approved by the Department of Revenue, our decision on the withdrawal from the city can have no practical effect. What respondents thus assert is that the withdrawal cannot be undone because subsequent steps taken by the Department of Revenue have occurred to finalize it.

We addressed an analogous situation in *WaterWatch*. In that case, the petitioner challenged an order of the Water Resources Department that had granted a city an extension of time to perfect its water rights. The city then perfected its water rights, and the department issued an order granting the city a water-right certificate, which the petitioner did not challenge. The department and the city argued that the case was moot because our decision on the extension order could have no effect on the certificate, which, by statute, is conclusive evidence of the water right described in

the certificate. *WaterWatch*, 259 Or App at 726-27. We concluded, however, that the petition was not moot. Relying on *Hamel*, we reasoned that, if the city had not been granted the extension, then the city would not have been able to perfect its water right, and the department would not have been able to lawfully issue the certificate to the city. Thus, if the department's extension order was unlawful, then the department's order issuing the certificate was unlawful as well. *WaterWatch*, 259 Or App at 728-30. Also, the petitioner had no practical ability to seek judicial review of the certificate. *Id.* at 730-31.

Our reasoning in *WaterWatch* applies here. A necessary predicate to the Department of Revenue's "approval" under ORS 308.225 is a valid withdrawal from the city under HB 4029. If the withdrawal is invalid, then the Department of Revenue's approval cannot stand. We also note that our reasoning in *WaterWatch* perhaps has even more force in this case because, unlike the certificate in *WaterWatch*, nothing in the Department of Revenue's "Notice to Taxing Districts" suggests that the withdrawal from the city cannot be undone; it provides only that the property description and accompanying map are "approved" for filing with the county.

Moreover, it does not appear that De Young could have challenged the Department of Revenue's notice, which is a function that the department fulfills to ensure that correct descriptions and maps are recorded in the counties for tax purposes. *See* ORS 308.225(7) (the department is to approve or disapprove a final description and map, and if it disapproves, it is to explain what corrections to the description or map are needed to meet the requirements of ORS 308.225); ORS 308.225(8) ("The filing of the description and map under this section is for assessment and taxation purposes only and does not affect or relate to filing for any other purpose."). The Department of Revenue plays no role in "approving" the withdrawal itself. ORS 308.225(2)(a) ("If a boundary change is made or proposed, *the person, governing body, officer, administrative agency or court that is or will be responsible for determining whether the boundary change is final* shall file with the county assessor and the Department of Revenue the legal description of the change or

proposed change and an accurate map showing the change or proposed change in final approved form \* \* \*." (Emphasis added.)). We discern no reason why the Department of Revenue's approval of GDI's property description and map could prevent us from effectively reviewing the propriety of the withdrawal of GDI's property from the city. The GDI and Patton petitions are not moot, because our decision will have practical effect.

D. *Adversity*

Finally, for a matter to be justiciable, the interest of the parties must be sufficiently adverse. *Kellas*, 341 Or at 486. Having earlier defined the nature of the order on review here, that requirement is easily met. De Young challenges the withdrawal of the GDI and Patton properties under HB 4029. At the public hearing on those withdrawals, De Young testified that she is a long-time resident of Damascus who has an interest in preserving the city as a functioning city, which is threatened by the ability of landowners to withdraw property without city approval. She is opposed to people withdrawing their property from the city and seeks to have HB 4029 declared unconstitutional. Respondents and the Department of Land Conservation and Development (DLCD)[7] take the opposing viewpoint, creating a true controversy for us to decide. *See Oregon Medical Association v. Rawls*, 281 Or 293, 299-302, 574 P2d 1103 (1978) (dismissing petition as nonjusticiable where both parties sought to have statute declared constitutional).

We turn to the merits of De Young's petitions for judicial review of the withdrawal of the GDI and Patton properties from the city.

## III. UNCONSTITUTIONAL DELEGATION

A. *Delegation cases*

De Young first challenges HB 4029 on the ground that it contains an unconstitutional delegation of legislative authority to private individuals. It is not disputed by any of

---

[7] DLCD has appeared as *amicus curiae* to defend the constitutionality of HB 4029 on behalf of the state. Respondents rely solely on the arguments made by DLCD in that regard.

the parties, nor do we think it reasonably can be disputed, that changing the boundaries of a city is an exercise of legislative authority, whether that authority is exercised by the legislature or the city. *See, e.g., Schmidt et al v. City of Cornelius*, 211 Or 505, 515, 316 P2d 511 (1957) ("We first observe that the fixing of municipal boundaries is generally considered to be a legislative and not a judicial function." (citing 2 McQuillin, Municipal Corporations § 7:03 (3d ed 1949))). What we must determine is whether, through HB 4029, the legislature has impermissibly delegated that legislative function.

"Three provisions of the Oregon Constitution, taken together, prohibit the delegation of legislative power to make laws." *State v. Davilla*, 234 Or App 637, 645, 230 P3d 22 (2010), *rev den*, 350 Or 717 (2011). Article I, section 21, provides, among other things, that no law shall "be passed, the taking effect of which shall be made to depend upon any authority, except as provided in this Constitution." Article III, section 1, provides that the

"powers of the Government shall be divided into three separate branches, the Legislative, the Executive, including the administrative, and the Judicial; and no person charged with official duties under one of these branches, shall exercise any of the functions of another, except as in this Constitution expressly provided."

And, finally, Article IV, section 1(1), provides that the "legislative power of the state, except for the initiative and referendum powers reserved to the people, is vested in a Legislative Assembly, consisting of a Senate and a House of Representatives."

Of course, the existence of constitutional constraints on the delegation of legislative power does not mean that every delegation of law-making power is unlawful. Rather, "[a]ccountability of government is the central principle running through the delegation cases." *Corvallis Lodge No. 1411 v. OLCC*, 67 Or App 15, 20, 677 P2d 76 (1984).

Early delegation cases focused on a general doctrine that "emphasizes the need for legislative standards as a precondition for the delegation of any governmental function."

*Corvallis Lodge,* 67 Or App at 19 (citing *General Electric Co. v. Wahle,* 207 Or 302, 330, 296 P2d 635 (1956); *Foeller v. Housing Authority of Portland,* 198 Or 205, 265, 256 P2d 752 (1953); and *Van Winkle v. Fred Meyer, Inc.,* 151 Or 455, 463, 49 P2d 1140 (1935)). That line of cases instructs that the legislature "cannot delegate its power to make law, but that it can delegate * * * the power to determine the existence of facts or circumstances mentioned in the law upon which the law will become operative." *State v. Sargent,* 252 Or 579, 580, 449 P2d 845 (1969). The difference between impermissible delegation of the power to make law and permissible delegation of the power to determine the existence of facts or circumstances described by the law, turns on whether the law contains objective legislative standards or a fully expressed legislative policy that guides the exercise of the delegated authority. *Compare Van Winkle,* 151 Or at 463 (holding invalid a statute that made into law Governor-approved price-fixing agreements into which a majority of persons engaged in the production or sale of a product had entered), *with Sargent,* 252 Or at 582 (holding valid a statute that delegated authority to an agency to designate dangerous drugs where the statute provided clear criteria on what would constitute a dangerous drug), *and Davilla,* 234 Or App at 646 (holding valid a statute that delegated authority to an agency to develop sentencing guidelines where the statute provided standards for the development of the guidelines and required legislative approval before they went into effect).

Later delegation cases shifted focus away from objective legislative standards and emphasized "that any delegation be accompanied by procedural safeguards to protect against arbitrariness." *Corvallis Lodge,* 67 Or App at 20. Under that line of cases, "the important consideration is not whether the statute delegating the power expresses *standards,* but whether the procedure established for the exercise of the power furnishes adequate *safeguards* to those who are affected by the administrative action." *Warren v. Marion County et al,* 222 Or 307, 314, 353 P2d 257 (1960) (emphases in original). "In testing for the adequacy of such safeguards it is important to consider the character of administrative action which the statute authorizes." *Id.*

For example, in *Corvallis Lodge*, we concluded that an administrative rule that required Class B liquor licensees to obtain information from Class A liquor licensees, which information determined whether the Class B licensee could obtain an event permit, resulted in an unconstitutional delegation because "it fail[ed] to provide procedural safeguards to protect against the unaccountable exercise of governmental power delegated to the Class A licensees." 67 Or App at 22. We explained:

> "When, as in this case, governmental power to make decisions granting or denying privileges is, in whole or in part,. delegated to private individuals who have a self-interest in the decisions, accountability is necessarily attenuated. That inherent problem is compounded in the present case because those seeking governmental action, *i.e.*, a permit, must *directly* confront self-interested private competitors to whom authority has been delegated in the first instance to ascertain facts that ultimately may determine the success or failure of the application. Given their competitive postures, there is a substantial risk that the Class A licensees' response will be colored by self-interest. A Class B licensee would be forced to confront that potentially arbitrary and unresponsive exercise of governmental authority and, unless there are sufficient procedural safeguards, would have no way to make it accountable."

*Id.* at 20-21 (footnote omitted; emphasis in original).

In contrast, in *Medford Firefighters Assn. v. City of Medford*, 40 Or App 519, 595 P2d 1268, *rev den*, 287 Or 507 (1979), we concluded that a statute that provided for compulsory arbitration was not an unconstitutional delegation of legislative power to the arbitrator, a private person. In that case, we concluded that adequate safeguards were in place because the arbitrator could not have a personal interest in the outcome, the arbitrator's decision had to be based on factors set out by the legislature, and the statute allowed judicial review of the arbitrator's decision. *Id.* at 525-26; *see also Warren*, 222 Or at 314-15 (delegation to the county to develop a building code held valid because the building code provided objective criteria to be applied by an inspector, and the statute required availability of an administrative-level appeal of an inspector's actions).

We have thus succinctly articulated our task in reviewing for an unlawful delegation as follows:

> "The test for determining whether a particular enactment is an unlawful delegation of legislative authority or a lawful delegation of factfinding power is whether the enactment is complete when it leaves the legislative halls. A legislative enactment is complete if it contains a full expression of legislative policy and sufficient procedural safeguards to protect against arbitrary application."

*State v. Self*, 75 Or App 230, 236-37, 706 P2d 975 (1985) (citations omitted).

With that background in place, we turn to the parties' specific arguments.

B. *Parties' arguments*

De Young contends that HB 4029 results in an unconstitutional delegation of governmental authority because it does not ensure governmental accountability under either line of cases discussed in *Corvallis Lodge*. She asserts that HB 4029, in practical effect, places all discretion for withdrawal, and all fact finding, in the hands of the individual landowners seeking to withdraw because the statute contains no provision for review of the facts. First, De Young argues that delegation of fact-finding functions to a private party that has a stake in the outcome must be scrutinized closely, as Oregon case law has never upheld such a delegation. Second, she argues that the statute fails to provide any safeguards to those affected by the withdrawals. The withdrawal of property from the city affects the nearby property owners, the residents of the city, and the city itself, but the statute does not provide any protection for those groups' interests, such as an effective mechanism to object, prior to the automatic withdrawal of property. De Young also argues that judicial review cannot be an adequate substitute for safeguards in the exercise of delegated authority, and, in any event, here it is inadequate because judicial review under the statute is limited and deferential to upholding the withdrawal.

Respondents counter that HB 4029 does not result in an unconstitutional delegation because it "was complete

upon passage; the legislature did not delegate to landowners the authority to enact the law or set its terms." Respondents assert that

> "HB 4029 specifically sets forth the circumstances in which the law is to operate, and provides for judicial review of those circumstances to make certain that only those qualified will receive the benefit of the law. The legislature has not delegated its authority to make the law; it has clearly set forth the circumstances under which a lawful withdrawal from the city may occur."

Respondents argue that the statute requires landowners to submit proof to the city that their property falls within the statute and, thus, "HB 4029 does not delegate any fact-finding authority to the applicants." Respondents also rely heavily on how the city has operated "in practice"— *viz.*, by making findings on whether an applicant has met the withdrawal criteria, which become part of the record on review that we use to determine "clear error"—to support its argument that fact finding is not delegated to the applicants.

C. *Delegation under HB 4029*

The thrust of the parties' opposing arguments center on what HB 4029 actually does. De Young asserts that it places all fact-finding functions in the hands of individual landowners seeking to withdraw from the city without providing any meaningful procedural safeguards. Respondents dispute that characterization and assert that the requirement imposed on landowners to submit proof to the city, the city's "practice" of making findings, and our judicial-review function demonstrate that no fact finding has been delegated to the landowners and that procedural safeguards are in place. Our decision largely depends upon what we conclude that HB 4029 purports to do and the means that it provides to accomplish it. Accordingly, we must review each section of HB 4029 and determine how the legislative scheme works.

Section 1(2) sets out who qualifies to use the procedure for withdrawal under HB 4029, thus freeing that person from the generally applicable withdrawal statute, ORS 222.460, which requires the city to initiate a withdrawal

of territory from the city. Those qualifications are that the person owns property within the boundaries of the City of Damascus[8] and that any portion of the property "is located on the boundary of the city and is within one-half mile of another city." Or Laws 2014, ch 75, § 1(2). Section 1(3) sets out the process that a qualifying landowner must follow to withdraw the landowner's property from the city. That process requires the landowner (1) to obtain a letter from DLCD confirming that "the city's comprehensive plan and land use regulations were not acknowledged in the four-year period following incorporation," and (2) to file a written statement with the city, with a copy to Metro and DLCD, that includes the name of the city, a declaration of the owner's intention to withdraw the owner's property from the city, a copy of documents showing ownership of the property, a legal description of the property, a copy of the county assessor's cadastral map of the property, and a copy of the letter obtained from DLCD. *Id.* § 1(3).

Section 2 provides that, upon receiving a landowner's written statement, the city must give notice of and hold a public hearing "on the question of the withdrawal" within 30 days of the city's receipt of the statement, at which hearing "the public may appear and be heard on the question." *Id.* § 2(1) - (3). However, once the landowner obtains the letter from DLCD and files its written statement with the city, HB 4029 ensures that the landowner's property will be withdrawn from the city after 30 days, either by order of the city or by operation of law. *Id.* § 2(4), (6). The statute does not provide any procedure by which the city, Metro, or DLCD may ensure, before withdrawal of the property, that the landowner meets the qualifications under section 1(2) or has

---

[8] Section 1(2)(a) and (b) defines a qualifying city as one "located within Metro [that] was incorporated after January 1, 2000, and before January 1, 2005," and that does not have an acknowledged comprehensive plan and land use regulations, as required by ORS 197.757. Or Laws 2014, ch 75, § 1(2). The sponsors of the bill acknowledged that the language in those two subsections was carefully crafted so that HB 4029 could apply only to the City of Damascus so long as the city continues to have an unacknowledged plan and land use regulations. *See, e.g.*, Audio Recording, House Committee on Rural Communities, HB 4029, Feb 11, 2014, at 41:50 (statement of Rep Bill Kennemer), https://olis.leg.state.or.us/liz/2014R1/Committees/HRC/Overview (accessed Sept 18, 2004); Audio Recording, Senate Floor Debate, HB 4029, Feb 27, 2014, at 28:11 (statement of Sen Arnie Roblan), https://olis.leg.state.or.us/liz/2014R1/2014-02-27 (accessed Sept 18, 2004).

filed a complete written statement as required by section 1(3). Rather, the withdrawal from the city is automatic 30 days after the filing of the written statement with the city regardless of the action or inaction of any governmental body within that time and regardless of what occurs at any public hearing "on the question." *See id.* § 2(4) ("After receiving testimony at the public hearing, the legislative body of the city *shall withdraw the tract from the city* \* \* \*." (Emphasis added.)); *id.* § 2(5) ("Within two business days \* \* \*, the city *shall report the change in its boundaries* \* \* \*." (Emphasis added.)); *id.* § 2(6) ("If the city refuses or fails to adopt the order or resolution within the 30-day period described in subsection (1) of this section: (a) *The withdrawal of the tract is deemed complete.* (b) *Metro shall report the change in the boundaries of the city* \* \* \*." (Emphasis added.)).

Although HB 4029 contains provisions for a public hearing at which, nominally, members of the public may be heard, the *practical effect* of the statute is to put the discretionary decision to withdraw from the city, along with the fact finding on the existence of qualifications for withdrawal, solely in the hands of individual landowners who no longer want their property within the boundaries of the city. *See Horner's Market v. Tri-County Trans.*, 256 Or 124, 126, 471 P2d 798 (1970), *overruled on other ground by Multnomah County v. Mittleman*, 275 Or 545, 552 P2d 242 (1976) ("Although this section is cast in terms of a proposal by the city to create the district, the practical effect of the statute is to vest in the city the power to create the district inasmuch as there is no other condition precedent to the existence of the district except the appointment of the members of a board of directors by the Governor, a duty which is imposed upon the Governor in mandatory terms."). Respondents' argument that the city has "in practice" tried to make some effort to determine whether certain properties factually qualify for withdrawal does not change our analysis. Our task is to determine whether *the legislature* has unlawfully delegated governmental authority to private landowners under the terms of HB 4029. That the city has attempted, without effect, to stop withdrawals that do not meet the legislative standards does not change that HB 4029 does not require such an effort—in fact, HB 4029 prohibits it.

After the property withdrawal is complete, whether by city order or by operation of law, HB 4029 sets out certain effects that follow so that the property can be annexed into another jurisdiction without delay, and so that the city is restricted from re-annexing the property. Or Laws 2014, ch 75, § 2(7) - (9).

Section 3 sets out who may seek judicial review of a withdrawal and the standards that we must apply in conducting that review. As discussed above, 266 Or App at 433-34, the city is not permitted to seek review (and, under the same rationale, no other governmental body would be permitted to do so); only members of "the public" who testified at the public hearing may seek judicial review. *See* Or Laws 2014, ch 75, § 3.

Once on review, we are confined to reversing or remanding the withdrawal only if we conclude that "[t]he withdrawal was clearly in error" or "[t]he withdrawal was unconsitutional." *Id.* § 3(2)(b)(A), (C). We may vacate the withdrawal if it was obtained through corruption, fraud, or misconduct or there was an evident mistake in the description of the property. *See id.* § 3(2)(b)(B). In making those determinations, however, we are not permitted to take on a fact-finding role; rather, in that respect, we are confined to the record and review for clear error as provided in section 3(2)(b)(A). *Id.* § 3(2)(a) ("Except as provided in paragraph (b) of this subsection, ORS 197.850, 197.855 and 197.860 apply to judicial review under this section."); ORS 197.850(8) ("Judicial review * * * shall be confined to the record. The court shall not substitute its judgment for that of the board as to any issue of fact."). Although not well defined in our case law, generally, review for clear error requires us to conclude that there is no evidence in the record to support a finding in order for us to reject a finding—a standard that, here, would be deferential to the landowner's own conclusion that the landowner can withdraw the landowner's property and does not permit us to resolve disputed issues of fact in the record.

From the structure of HB 4029, we can thus conclude the following: (1) the initial decision whether property will be withdrawn from the City of Damascus, including

whether the facts exist to meet the withdrawal qualifications, is solely within the province of the private landowner that seeks to withdraw property from the city; (2) only private individuals who appeared and testified at a public hearing on a withdrawal may obtain judicial review of the withdrawal; and (3) on review, we cannot engage in fact finding but may reverse a withdrawal only if there is no evidence in the record to support withdrawal. Other than our constrained review, which does not include a fact-finding function, HB 4029 does not provide for governmental accountability of a withdrawal of property from the city.

Under that view of HB 4029, which is compelled by its language, we agree with De Young and conclude that the law is an unconstitutional delegation of legislative authority to private individuals. Returning to how we began our analysis, our task here is to determine whether HB 4029 effects an unconstitutional delegation of legislative authority to fix municipal boundaries. Respondents assert that HB 4029 only affords a process through which landowners can withdraw from the city—*viz.*, they argue that HB 4029 does not delegate any legislative authority to the landowners. We disagree.

Although HB 4029 provides criteria to determine *which* landowners are given the authority to change the city's boundary, those criteria do not provide any guidance to the eligible landowners on the exercise of *their* authority *to change* the boundary. It is the delegation of the latter authority that is impermissible.

Subject to constraints arising from the home-rule authority of cities and their electors, the legislature has authority to alter city boundaries and to authorize cities to exercise their legislative authority to do that. However, HB 4029 does not alter the city's boundary nor authorize the city to do so. Rather, HB 4029 establishes—as legislative policy—that the decision whether to alter the city's boundary should be made by certain eligible landowners. That policy choice—*viz.*, giving landowners the authority to alter the boundary—represents a complete and unconstrained delegation of legislative authority because the location of the city's boundary is left to the whim of the eligible landowners,

that is, the legislation contains no criteria or expression of legislative policy as to how *that* delegated authority is to be exercised by the landowners. It is only through the eligible landowners' discretionary decision to withdraw from the city, or to remain within the city, that the boundary of the city is altered or maintained. The legislature's decision to delegate that legislative authority to certain landowners, without any expression of policy to guide their decision, is an unconstitutional delegation in its purest form because it is a delegation of the legislature's power to make the law—a law that alters the location of the city's boundary. *See Van Winkle*, 151 Or at 462 ("Under these [constitutional] provisions the legislature cannot confer upon any person, officer, agency, or tribunal the power to determine what the law should be."); *see also Schmidt*, 211 Or at 522-23 ("It was said that it is competent for the legislature to pass a law, the ultimate operation of which may by its own terms be made to depend on a contingency. In that case the contingency was the decision of a landowner at his option to file a petition for disconnection. The difficulty which we find in this reasoning is that the granting of the petition was by statute made mandatory upon proof of the required facts. Thus the voluntary act of the landowner was not merely an exercise of the right of petition but was in fact the thing which necessarily resulted in the disconnection.").

To illustrate our point, we contrast HB 4029 with a hypothetical land-use law. Under the hypothetical law, a landowner that owns property located within a certain area (such as touching the border of a city boundary within one-half mile of another city) is permitted to build an office building on its property upon notifying the city that it intends to do that. An eligible landowner could build an office building as of right, but the decision whether to build it would be the landowner's to make.

Although the hypothetical law appears to be conceptually similar to HB 4029, the hypothetical law does not contain the delegation problem embodied in HB 4029. In the office-building hypothetical, the legislative function is deciding, as a land-use matter, which landowners will be eligible to build office buildings as of right. The law as to that

decision is complete upon passage. The decision whether *to build* an office building on a particular parcel of private property is not a legislative function; it is a decision held by the property owner. Thus, allowing a landowner to choose to build, or not to build, an office building is not a delegation of law-making authority. However, the same cannot be said with regard to the location of a city's boundary. Deciding precisely where a city's boundary is located *is* a legislative function. Thus, allowing a landowner to choose to alter the boundary by leaving the city *is* a delegation of legislative authority. It is the nature of the ultimate decision at issue here—changing a city's boundary—that distinguishes HB 4029 from other laws and that results in an impermissible delegation of legislative authority by giving eligible landowners the authority to change the city's boundary.[9]

We also conclude that HB 4029 fails under the second line of delegation cases because it delegates to self-interested private landowners the fact-finding function of determining their own eligibility under the law without any meaningful procedural safeguards. Even if governmental authority can in theory be delegated to interested, private individuals, that type of delegation further heightens the need for adequate safeguards to protect against arbitrary action, *viz.*, action contrary to the legislative scheme. *See Corvallis Lodge*, 67 Or App at 20 n 3 ("As a general rule, the delegation of a fact-finding function to private individuals is an acceptable procedure. However, it is inappropriate when the group to which the fact-finding function is delegated has an interest in the way that the facts are determined."). HB 4029 does not provide those safeguards.

Although, in form, HB 4029 lets members of the public complain about a particular withdrawal of property, in function, HB 4029 ensures that those complaints will not be heard, because whether a particular property is withdrawn from the city is entirely up to the property owner. As for the city—which is most affected by the application of HB 4029—the law ensures that the city receives *no safeguards* at all.

---

[9] In other words, through HB 4029, the legislature has made each eligible landowner a lawmaker with regard to the city's boundary, allowing each of them to amend the law that set the city's boundary and, thereby, to alter the laws that apply to them by removing themselves from the city's jurisdiction.

The legislative choice here to give decision-making authority to interested landowners fails to provide sufficient assurance that the legislative acts of those landowners will be based on the withdrawal criteria in HB 4029, rather than the individual preferences of the interested landowners. Without such assurances, the delegation at issue here risks putting legislative policy-making in the hands of the interested landowners, even if the delegation of that authority were otherwise lawful, which, as we have explained above, 266 Or App at 448-50, it is not. *Compare Corvallis Lodge*, 67 Or App at 22 (rule held to be unlawful delegation where there were no safeguards on fact-finding function delegated to interested commercial businesses), *with Medford Firefighters*, 40 Or App at 525-26 (statute held constitutional where disinterested arbitrator was bound to apply legislative factors and judicial review was available).

The assurance that the legislative policy will govern the delegated decision-making must exist independently of judicial review. That is, there must be adequate assurance that the exercise of delegated authority will be properly exercised in the first instance. The judicial review that is afforded under HB 4029 cannot provide that assurance because it is not a required part of the decision-making process. Our dismissal of most of the petitions for judicial review for lack of standing amplifies those very delegation concerns. The withdrawals in those dismissed cases remain in effect solely because interested landowners filed statements with the city to withdraw their property, which the landowners could file without regard to whether their property met the legislative criteria for withdrawal. Because HB 4029 delegates legislative authority to interested landowners to fix the boundaries of the city without any safeguards to protect against arbitrary action, *viz.*, action that is contrary to the legislative scheme, HB 4029 effects an unconstitutional delegation of legislative authority for that reason as well.

In sum, because the city petitioners lack standing under HB 4029, we dismiss the city petitioners' petitions in Brown, GDI and Patton. In accordance with that disposition, we also dismiss the 20 petitions held in abeyance, because the city petitioners are the only petitioners seeking review in those cases. Because De Young has standing in GDI and

Patton, we consider her petitions in those two cases. We conclude in GDI and Patton that HB 4029 is an unconstitutional delegation of legislative authority to interested landowners to fix the boundaries of the city, and thus, we reverse the withdrawals in GDI and Patton. Or Laws 2014, ch 75, § 3(2)(b)(C) ("[T]he court may reverse or remand the action of the city only if the court finds that * * * [t]he withdrawal was unconstitutional."). Because we conclude that HB 4029 is an unconstitutional delegation of legislative authority, we do not reach De Young's arguments regarding home-rule authority or whether the withdrawal of Patton's property was clearly in error.

In A156922 and A156923, reversed on cross-petition; in A156920, A156921, A156922, A156923, A156963, A156964, A156982, A156983, A156984, A157037, A157042, A157043, A157044, A157045, A157046, A157047, A157130, A157166, A157167, A157345, A157455, A157456, A157457, petition dismissed.